# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-3119

_____

Lori Clegg,

        Appellant,

    v.

Arkansas Department of Correction;
Roger Cameron, in his Individual
and Official Capacity as SATP
Administrator; Cedric Albritton, in
his Individual and Official Capactiy
at SATP Leader,

        Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Eastern District of Arkansas.

[PUBLISHED]

_____

Submitted: March 15, 2007
Filed: August 13, 2007

_____

Before COLLOTON, HANSEN, and GRUENDER, Circuit Judges.

_____

HANSEN, Circuit Judge.

Lori Clegg filed this suit against her employer and individual coworkers alleging race and gender discrimination, retaliation, and violations of the Uniform Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301-

4333. The district court[1] granted the defendants' motion for summary judgment and dismissed Ms. Clegg's claims. She appeals. We affirm.

I.

Lori Clegg, an African-American female, began working for the Arkansas Department of Correction (ADOC) in 1997. In 2003, Ms. Clegg was working in the Tucker maximum security unit as a Substance Abuse Treatment Program (SATP) coordinator. As a SATP coordinator, Ms. Clegg was classified as a Grade 20 employee.

In February 2003, Ms. Clegg was activated for military duty in Iraq as part of her service in the Army National Guard. She took military leave from the ADOC and served overseas until June 2004. Upon her return, Ms. Clegg notified the ADOC that she planned to return to work on September 7, 2004.

In July 2004, the administrator of the SATP program, Roger Cameron, telephoned Ms. Clegg at home to inform her of two pieces of information. The first was that state certification requirements had changed while she was on leave and that in order to remain qualified for her job and to continue to be employed by the ADOC, she needed to obtain a Certified Criminal Justice Professional credential. Cameron also told Ms. Clegg that they were considering assigning her to the Therapeutic Community (TC) counseling unit at Tucker, instead of the SATP unit, upon her return in September.

Ms. Clegg did not agree with the ADOC's tentative decision to transfer her to the TC program, and she filed a complaint with her military unit's Judge Advocate

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

General's (JAG) office and the Department of Labor. The JAG sent a letter to ADOC shortly thereafter, and Ms. Clegg was notified by ADOC on August 27, 2004, that she would be placed in her original SATP position upon her return. The Department of Labor closed its investigation and sent a closing letter to the ADOC on September 28, 2004, a month after ADOC had already notified Ms. Clegg she would return to the SATP position.

Ms. Clegg returned to work on September 7, 2004. Ms. Clegg returned as a Grade 20 employee and received a higher salary than prior to taking leave. She benefitted from two cost-of-living increases that had been awarded in that time period. Working with Ms. Clegg in the SATP unit upon her return were Cedric Albritton, an African-American male who had taken over Ms. Clegg's duties when she was on military leave, and Jess Cathcart, a white male. Ms. Clegg's immediate supervisor was Kerry Bakken, a white male, who served as the Clinical Supervisor for the ADOC's substance abuse programs at the Tucker unit. Bakken reported directly to Administrator Cameron.

Ms. Clegg filed a complaint with the EEOC on December 9, 2004, alleging racial and sexual discrimination and retaliation during the time period from July 13, 2004, through October 14, 2004. She alleged that during that time she was subjected to retaliation by being denied items she required for work and that she was discriminated against because she was not given her same position or rate of pay upon her return. A second EEOC complaint was filed by Ms. Clegg on April 5, 2005, in which she alleged various types of retaliatory behavior were directed toward her after she filed the first EEOC complaint. Specifically, Ms. Clegg alleged that she was denied training opportunities, was subjected to different terms and working conditions than her coworkers, and that she was unfairly given an adverse performance evaluation.

After receiving a right to sue letter from the EEOC, Ms. Clegg filed suit against the ADOC, ADOC Director Larry Norris, Warden Marvin Evans, Jr., Administrator Cameron, and coworker Albritton, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; violations of her 14th Amendment due process rights pursuant to 42 U.S.C. § 1983; the Arkansas Civil Rights Act (ACRA), Ark. Code §§ 16-123-101 to 16-123-109; and USERRA. Ms. Clegg later voluntarily dismissed Director Norris and Warden Evans from the suit, and the remaining defendants moved for summary judgment. The district court determined that the Eleventh Amendment provided immunity to the ADOC and to Cameron and Albritton in their official capacities from monetary damages sought under the ACRA and for those sought pursuant to § 1983, and dismissed those claims as to those defendants. Ms. Clegg's Title VII claims against Cameron and Albritton in their individual capacities were dismissed because supervisory employees are not individually liable under Title VII, and the ACRA claims were dismissed against them because ACRA does not impose liability on nonemployers.

The district court then went on to analyze the discrimination claims. It determined that Ms. Clegg failed to demonstrate that an adverse employment action had been taken against her and granted the defendants' motion for summary judgment on those claims. The district court also granted qualified immunity to Albritton and Cameron because there was no evidence of a subjective intent to discriminate against Ms. Clegg. As to the retaliation and USERRA claims, the district court again determined that Ms. Clegg failed to show she was subjected to an adverse employment action and granted summary judgment to the defendants.

Ms. Clegg now appeals the dismissal of her claims, contending that the district court erred in granting Cameron and Albritton qualified immunity and that there were disputed issues of material fact that made it improper to grant summary judgment on the other claims because she had in fact sufficiently demonstrated that she was subjected to an adverse employment action. After careful review, we affirm.

II.

A. Summary Judgment

"We review the grant of summary judgment *de novo*, using the same standard as the district court, and we view the evidence in the light most favorable to the nonmoving party." Admin. Comm. of Wal-mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa, 479 F.3d 538, 541 (8th Cir. 2007). A moving party is entitled to summary judgment only if there is no genuine issue of material fact demonstrated in the record. Id.; Fed. R. Civ. P. 56(c).

1. Discrimination

Discrimination claims asserted pursuant to § 1983, Title VII, and the ACRA "are analyzed under the burden-shifting framework set forth in McDonnell Douglas."[2] Maxfield v. Cintas Corp. No. 2 (I), 427 F.3d 544, 550 (8th Cir. 2005). Using this framework, the plaintiff must first "establish a prima facie case by showing that he or she: (1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; [and] (3) suffered an adverse employment action; . . . (4) under circumstances permitting 'an inference of discrimination.'" Id. (quoting Zhuang v. Datacard Corp., 414 F.3d 849, 854 (8th Cir. 2005)). If the plaintiff establishes this prima facie case, then the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the action." Id. If such a reason is proffered, then the employee must provide evidence from which a reasonable fact finder can conclude that the reason offered by the employer "is merely a pretext for [unlawful] discrimination." Id.

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805-06 (1973).

The district court determined that Ms. Clegg failed to establish a prima facie case of discrimination because she failed to show she had suffered an adverse employment action, the third element. "'An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.'" Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007) (quoting Wedow v. City of Kansas City, Mo., 442 F.3d 661, 671 (8th Cir. 2006)). This might include "'[t]ermination, cuts in pay or benefits, and changes that affect an employee's future career prospects,'" as well as "'circumstances amounting to a constructive discharge.'" Higgins v. Gonzales, 481 F.3d 578, 584 (8th Cir. 2007) (quoting Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016-17 (8th Cir. 1999)). "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not" rise to the level of an adverse employment action. Id.

The district court analyzed Ms. Clegg's discrimination claims as roughly alleging that she was discriminated against by not being put back into her former position or rate of pay upon her return from military duty, that her duties were altered and reassigned, that she was denied training, that she was given a poor performance evaluation, and that she was not welcomed upon her return or provided with the tools she needed to be productive (such as keys to file cabinets or a telephone and telephone access code). After reviewing the record and the allegations, both individually and cumulatively, we agree with the district court's determination that Ms. Clegg failed to produce evidence showing she suffered an adverse employment action.

While Ms. Clegg contends that she was not returned to her same position or pay grade, the record establishes that Ms. Clegg was reinstated at the same employee grade level she enjoyed prior to her military leave and actually received a higher hourly pay rate as a result of the two cost-of-living adjustments awarded during her absence. While Cameron told Ms. Clegg during the July 2004 phone call that he was considering placing her in a different counseling position upon her return, after Ms.

Clegg made it clear that she did not want that placement, she was returned to her original SATP role. No changes were made to Ms. Clegg's position within the Tucker unit as a result of her telephone conversation with Mr. Cameron. Ms. Clegg also complains that no one welcomed her back to the unit or provided any sort of orientation, and that she was not immediately provided with several items she needed. However, those items, such as a telephone code and keys to the filing cabinets, were provided to her as soon as she asked for them. See Wedow, 442 F.3d at 671 ("Mere inconvenience without any decrease in title, salary, or benefits or that results only in minor changes in working conditions does not meet this standard.") (internal marks omitted). The fact that she was not welcomed back to work in the way she would have liked or immediately reoriented to her position by a coworker or supervisor does not rise to the required level as it had no impact on the material aspects of her employment. See Higgins, 481 F.3d at 585 ("Any lack of mentoring or supervision simply does not rise to the level of an adverse employment action, [when one] cannot establish the absence had any effect on [the] employment situation."). The same is true of several of Ms. Clegg's work responsibilities that had been reassigned in her absence. When she was not automatically reassigned certain duties upon her return, she asked to have them returned to her, and the request was satisfied. Even if there were duties not officially reassigned back to Ms. Clegg, the record does not establish that this caused a material change in her employment. See id. (stating that "a job reassignment involving no corresponding reduction in salary, benefits, or prestige is insufficient to establish an adverse employment action.").

Ms. Clegg further alleges that she was given a poor performance evaluation. However, the evaluation, while scored lower than those she generally received prior to taking military leave, still rated her work as "satisfactory," and we have previously stated that "[a]n unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." Id. at 586 (internal marks omitted and alteration in original). There is no indication that this evaluation was used to Ms.

Clegg's detriment. She was temporarily assigned to another unit for training in order to address some of the areas of concern noted in her evaluation, but this temporary reassignment had no impact on Ms. Clegg's pay, benefits, or permanent position in the Tucker unit. Because there was no material detriment to this training assignment, and because the temporary reassignment itself is not an adverse employment action, the evaluation did not have a negative impact on Ms. Clegg. Ms. Clegg's argument that ADOC's denial of training was an adverse action also fails. An employer's denial of a training request, without something more, is not itself an adverse employment action. Id. at 585. Ms. Clegg attended several other training sessions after her return to the Tucker unit and there is no indication that the denial of this one training session had any impact on her eligibility for benefits such as a promotion or pay raise. See id. at 586.

Nor does the pattern of behavior alleged by Ms. Clegg "show the level of systematic bad treatment adversely affecting [her] employment situation" that has been alleged in other cases where we have found discrimination based upon a cumulative review of the record. Id. at 588. While it is quite likely that Ms. Clegg did not always get along well with her coworkers, their behavior does not establish "a material employment disadvantage" to Ms. Clegg. Id.; see also Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 759 (8th Cir. 2003) ("Title VII does not, however, create a cause of action for all unpleasant or abusive behavior in the workplace.") (internal quotation omitted). As such, we affirm the grant of summary judgment to the defendants on the discrimination claims.

2. Retaliation

Ms. Clegg also claims that she was retaliated against based upon her complaint to the Department of Labor and to the JAG regarding the proposed change in her work assignment upon her return, and then again after her initial EEOC claim. We use the McDonnell Douglas framework to analyze Ms. Clegg's retaliation claim. Stewart v.

Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007). In order to establish a prima facie case of retaliation, the employee must produce "evidence: '(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events.'" Id. at 1043 (quoting Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 914 (8th Cir. 2006)). The district court granted summary judgment to the defendants after determining that Ms. Clegg failed to produce evidence that she suffered an adverse employment action. On appeal, Ms. Clegg contends that the district court erred in its determination that she failed to produce sufficient evidence demonstrating an adverse employment action and erred by using the wrong standard for determining an adverse action under a retaliation claim.

Two days after the district court's decision in this case, the Supreme Court decided Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006), which altered the analysis we use when evaluating claims of adverse employment actions in retaliation cases. "[T]he Court expressly held that retaliation claims under Title VII could be based on a hostile work environment and need not be based solely on discrete adverse employment actions that affect the terms or conditions of employment." Stewart, 481 F.3d at 1042. "In order to prove retaliation, a plaintiff must show, 'that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Vajdl v. Mesabi Acad. of KidsPeace, Inc., 484 F.3d 546, 552 (8th Cir. 2007) (quoting Burlington N., 126 S. Ct. at 2415). The new standard is objective in order to "avoid[] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." Burlington N., 126 S. Ct. at 2415. "The new standard attempts to find employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Vajdl, 484 F.3d at 552 (internal quotations omitted); see also Devin v. Schwan's Home

Serv., Inc., No. 06-3551, 2007 WL 1948310 at *5 (8th Cir. July 6, 2007) (stating that trivial harms resulting from retaliatory behavior do not meet the standard set forth in Burlington Northern).

Many of the acts that Ms. Clegg claimed were discriminatory she also alleges were done in retaliation for her complaints. These include failure to provide training and orientation, denying her access to needed employment tools, failure to reinstate her to her prior position, interfering with her authority, unfairly adding negative reports and reprimands to her personnel file, treating her differently than her coworkers, excluding her from meetings, giving her a negative evaluation, denying her training, and adding days to a training assignment at a different unit.

After reviewing the record and applying the standard set forth in Burlington Northern, we agree with the district court's determination that Ms. Clegg failed to demonstrate that she suffered an adverse employment action. Any harm evidenced in the record was at most trivial, failing to meet the significant harm standard set forth in Burlington Northern. See Devin, 2007 WL 1948310 at *5. While Ms. Clegg's evaluation, the first since her return from military leave, was lower than those she had received prior to her leave, the evaluation still listed her work as satisfactory and her supervisors worked with her to provide training to address the areas in which she had scored lower. The various failures Ms. Clegg alleges, such as failing to provide her with employment tools, notice of new department policies, and not immediately having her attend certain meetings, were remedied after Ms. Clegg brought these failures to the attention of her supervisors or asked to be included. The remedial training Ms. Clegg complains of was done in order to help her improve on her next performance evaluation and was only a temporary reassignment. Ms. Clegg was denied permission to attend one training session, but in fact had permission to and did attend several others after her return from active military duty. The record also indicates that upon her return to the Tucker unit, she was employed at the same grade and position as when she took military leave. Many of Ms. Clegg's complaints

-10-

involve relations between her and her coworkers, which we do not doubt may have been contentious. However, "Title VII . . . does not set forth a general civility code for the American workplace. An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 619 (8th Cir. 2007) (quoting Burlington N., 126 S. Ct. at 2415) (internal marks omitted). Ms. Clegg has failed to demonstrate that a reasonable worker would have been dissuaded from engaging in protected activity based upon her allegations of retaliatory behavior, and we affirm the district court's grant of summary judgment.

### 3. USERRA

The Uniformed Services Employment and Reemployment Rights Act (USERRA) was enacted in an attempt to prevent employment discrimination based upon military service. Maxfield (I), 427 F.3d at 551. Ms. Clegg alleges that the defendants violated §§ 4311 and 4312 of USERRA upon her return from military duty. These sections protect military service members at two different periods as they seek to return to their previous employment after taking leave for military duty. Section 4312 protects service members at the instant of seeking reemployment, entitling the service member to reemployment in either the position she would have been in had she not left for military service "or a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A) (defining rights set forth in § 4312, which entitles a person to be rehired upon return from military service). Section 4311 applies after reemployment has occurred and "prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 304 (4th Cir. 2006) (noting that § 4312 protects military members up to the instant of

-11-

reemployment while other sections of USERRA, such as § 4311 and § 4316, protect the member after reemployment occurs).

As such, § 4312 is violated only if Ms. Clegg was not reemployed in the position she would have been in had she not taken military leave or "a position of like seniority, status and pay." 38 U.S.C. § 4313(a)(2)(A). However, at the time she returned to the Tucker unit, Ms. Clegg was reinstated at the same employee grade and her rate of pay reflected two raises that were instituted while she was away. She was returned to the same unit and therapy area in which she was employed prior to her military leave. There is no indication that Ms. Clegg's employment benefits were not the same upon her return. The fact that it was suggested that Ms. Clegg be reinstated in the TC program and not the SATP program does not itself violate § 4312 because Ms. Clegg was assigned to her former position in the SATP program when she returned. Most of the complaints Ms. Clegg makes regarding discriminatory and retaliatory acts refer to things that occurred after she returned to work, and thus § 4312 would not be applicable to those allegations. See Francis, 452 F.3d at 305. There is no indication that she was not reemployed as required pursuant to § 4312.

As to the claims under § 4311, Ms. Clegg would need to show that her military service was a motivating factor in her employer's decision to take an adverse action against her. See Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 16-17 (1st Cir. 2007). While claims under USERRA do not follow the same three-step burden shifting analysis set forth in McDonnell Douglas, the employee must still have suffered an adverse employment action in order to succeed on a claim, Maxfield (I), 427 F.3d at 551, defined in USERRA as a "benefit of employment," 38 U.S.C. § 4303(2).

A benefit of employment is defined as "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary . . . )." 38 U.S.C. § 4303(2). This "includes rights and benefits under a pension plan, a health plan, an employee

-12-

stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." Id. Because USERRA was enacted to protect the rights of military service members and veterans it is construed broadly and "in favor of its military beneficiaries." Maxfield (I), 427 F.3d at 551-52 (internal marks omitted).

Even construing the statute broadly, we agree with the district court's determination. After reviewing Ms. Clegg's allegations and the record, and even if we assume that a significant change in job responsibilities without a change in title or pay could be considered a denial of an employment benefit, see Francis, 452 F.3d at 306 n.4, there is insufficient evidence to demonstrate that an adverse action or a denial of a benefit of employment occurred in this case. As noted in Francis, the cases where it has been held that a change in job duties constituted an adverse action involved instances when the new job responsibilities were drastically different than the old. Id. (collecting cases). Looking at the record in Ms. Clegg's favor, as we must on summary judgment, and assuming that her job responsibilities did change in certain ways after her return, the alleged changes were not drastically different from her responsibilities prior to taking military leave. While Ms. Clegg contends the adverse performance review threatened her eligibility for bonuses, the end result was a satisfactory rating that had no detriment to her. After reviewing the record as a whole, we agree with the district court's determination that Ms. Clegg failed to demonstrate that she was denied a benefit of employment or suffered an adverse employment action as required to succeed on a claim under § 4311 of USERRA.

B. Immunity

The district court dismissed the Title VII claims against Cameron and Albritton in their individual capacities because "supervisors may not be held individually liable under Title VII." Schoffstall v. Henderson, 223 F.3d 818, 821 n.2 (8th Cir. 2000).

Certain discrimination claims against Cameron and Albritton in their official capacities were then later dismissed by the district court based upon qualified immunity. Ms. Clegg claims that the district court erred in its grant of qualified immunity to these two defendants on the discrimination claims. We review a district court's grant of qualified immunity de novo. Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006).

"Qualified immunity protects 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Cox v. Sugg, 484 F.3d 1062, 1065 (8th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (alteration in original). A qualified immunity analysis involves two questions. In this case, we first ask if the facts demonstrate that the defendants' conduct caused a violation of Ms. Clegg's statutory or constitutional rights. Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003). If the facts, viewed in a light most favorable to Ms. Clegg, are sufficient to show a violation of her statutory or constitutional rights, we then ask if the right violated was one clearly established at the time. Id. Because we have earlier found that Ms. Clegg's discrimination claims failed due to the lack of an adverse employment action taken against her, the answer to the first question in the analysis is no. If the first question is answered in the negative, the district court's judgment must be affirmed.[3]

III.

Accordingly, we affirm the judgment of the district court.

_____

_____

[3]Ms. Clegg also claims that it was improper for the district court to grant qualified immunity to Cameron and Albritton on the USERRA claims. However, there is no indication that qualified immunity was granted in relation to the USERRA claims, and as such there is no need to discuss this claim in further detail.