# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-1477

_____

| | |
|---|---|
| Chad Leroy Lisdahl, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Mayo Foundation, et al., | * |
| | * |
| Appellees. | * |

_____

No. 10-2038

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | |
|---|---|
| Mike Amendola, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Mayo Foundation, et al., | * |
| | * |
| Appellees. | * |

_____

No. 10-2040

_____

Roger Swor,                          *
                                        *

         Appellant,             *
                                          *

      v.                          *
                                          *

Mayo Foundation, et al.,       *
                                        *

        Appellees.            *

_____

Submitted: November 17, 2010
Filed: February 28, 2011

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Chad Leroy Lisdahl, a veteran, sued Gold Cross Ambulance, a part of the Mayo Foundation for Medical Education and Research, and David B. Johnson, his supervisor at Gold Cross, alleging workplace discrimination and constructive discharge on the basis of veteran status, in violation of the Uniformed Services Employment and Reemployment Act of 1994, 38 U.S.C. §§4301-4335 ("USERRA"). Michael T. Amendola and Roger A. Swor, Gold Cross paramedics, also sued under USERRA alleging retaliation by Gold Cross and Johnson for providing statements in support of Lisdahl's claims. After a bench trial on Lisdahl's claims, the district

court[1] entered judgment for the defendants. *See Lisdahl v. Mayo Found. for Medical Educ. and Research*, 698 F.Supp.2d 1081 (D.Minn. 2010). The district court[2] later granted defendants' motion for summary judgment in the retaliation cases of Amendola and Swor. *See Amendola v. Mayo Found. for Medical Educ. and Research*, Nos. 08-6231, 08-6232, 2010 WL 1286087 (D.Minn. Mar. 29, 2010). Having jurisdiction under 28 U.S.C. § 1291 of these consolidated appeals, this court affirms.

I.

Plaintiffs were paramedics employed by Gold Cross, which provides ambulance services in the Duluth, Minnesota, and Superior, Wisconsin, area. Chad Lisdahl, a Gold Cross employee since 1999, joined the Marines in 2002 and served three tours in Iraq before being discharged in 2006. While in the military, Lisdahl had surgery on both knees. Before he entered active duty, Gold Cross advised him to maintain his Minnesota paramedic's license, because maintaining certification with the National Registry of Emergency Medical Technicians would be extremely difficult while on active duty (Gold Cross requires every paramedic to be nationally certified). If Lisdahl maintained his Minnesota licensure, upon returning he would be qualified to take the examinations for recertification by the National Registry. While in Iraq, Lisdahl allowed his National Registry certification to lapse. After he returned, Gold Cross allowed him a year to recertify, but Lisdahl's employment with Gold Cross terminated before the one-year period ended.

---

[1] The Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota, now retired.

[2] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Before coming home to Duluth-Superior, Lisdahl arranged with Gold Cross to resume work in September 2006. Rejoining Gold Cross required the same orientation and screening given to any paramedic returning from an extended leave of absence, or transferring to Gold Cross from another employer. Although one orientation was cancelled due to lack of participants, Lisdahl returned to Gold Cross at the same position (assistant captain), seniority, and rate of pay as before he joined the Marines (including intervening pay increases). Upon his return, like all new hires or persons restored from extended leave, Lisdahl was classified as "nonstatus," which meant he could do all regular paramedic work but had to be in the same truck as a "status" paramedic. Within a few months, and due to delays on Lisdahl's part, he was returned to "status" classification.

Back at work, Lisdahl was supervised by David Johnson, who indisputably has a direct, no-nonsense management style, strictly enforcing Gold Cross's procedures. Before Lisdahl's return, Johnson incorrectly stated at least once to Lisdahl's co-workers that Gold Cross did not have to rehire him, because he voluntarily joined the military. While at Gold Cross, Johnson allegedly made some jokes at the expense of the military: for example, that some Army Reservists did not do anything except play cards, and that National Guard service had to be a joke if a certain co-worker joined, in view of that worker's weight and bearing. Once, Johnson engaged in horseplay with a larger, stronger colleague that left the colleague with a welt and bruise from being tackled to the ground (while Johnson asked to be written up for the incident, his superiors imposed no discipline). On another occasion, Johnson threatened to rip a co-worker's face off if he made another comment that Johnson's wife was having an extramarital affair.

Johnson did not make any military-related comments to Lisdahl. They had one verbal confrontation, after Lisdahl objected to Johnson's criticism of Roger Swor for repeatedly exceeding the minutes allowed for Gold Cross cell phones. After both men raised their voices, Johnson asked Lisdahl whether that was the approach Lisdahl

intended to take in their future relationship. Lisdahl also testified that Johnson treated him dismissively at work.

Based on these scattered comments and incidents, Lisdahl claims he feared Johnson would attack him or find some pretext to fire him. The district court made fact-findings about the Johnson-Lisdahl relationship: "We expressly find that the concentrated effort by Lisdahl, and his attorney, to demonize Johnson was as fictionalized as it was scurrilous," and that "there is absolutely no credible basis to ascribe any legitimacy to that claimed fear." The district court found the comments attributable to Johnson were "either severely dated, or they were oblique with reference to anything undesirable about military service." Lisdahl did not report Johnson's purportedly draconian treatment to any manager at Gold Cross, nor did Lisdahl's coworkers complain about any abuse of Lisdahl by Johnson.

On May 21, 2007, Lisdahl requested time off pursuant to the Family and Medical Leave Act for treatment of his self-reported "serious health condition" of Post-Traumatic Stress Disorder (PTSD). Gold Cross granted the request. During his time off, Lisdahl filed a claim (with sworn statements) for Long Term Disability Benefits with Gold Cross for PTSD. This claim was denied, as his plan did not cover disabilities caused by acts of war. Lisdahl appealed and was evaluated by two doctors, who found little evidence that his military experience adversely impacted his work life. Lisdahl then failed to exhaust his appeals with Gold Cross.

During his medical leave, Lisdahl also applied for disability and unemployability benefits from the United States Department of Veterans Affairs ("VA"), claiming in sworn statements that he was disabled and permanently unemployable due to the combination of his bad knees, chronic depression, and PTSD (resulting from exposure to IED explosions and the death of comrades). Lisdahl's statements described how after returning to Gold Cross, he had difficulty with concentration and memory, greatly impairing his ability to do his job. However, the

-5-

district court found no evidence to support this claim—none of Lisdahl's co-workers noticed any concentration or memory issues, and his last performance review before medical leave is glowing in its praise of Lisdahl's work.

With respect to his departure from Gold Cross, each of Lisdahl's sworn statements identified his claimed service-related injuries as his reason for leaving; none of the statements mention any discriminatory conduct by Gold Cross or Johnson. Lisdahl attested: "My service connected PTSD along with my bad knees have prevented me from working and forced me to resign from my Paramedic job." In a filing with the VA, Lisdahl mentioned that "my physicians have stated it would be detrimental for me to return" to Gold Cross, an apparent reference to a VA physician's assistant who Lisdahl claims told him to report that he was diagnosed with PTSD in order to obtain VA benefits. The district court expressly found Lisdahl's testimony unbelievable to the extent he claims he was innocently duped by VA staffers into submitting false reports of disability and unemployability to the VA. While the VA did grant some disability benefits, it denied Lisdahl's claim for increased compensation based upon unemployability.

Lisdahl never returned to Gold Cross from medical leave, formally resigning in June 2008. He brought this suit alleging various adverse employment actions and a constructive discharge due to veteran status. In filing his administrative complaint, Lisdahl sought supportive statements from former co-workers Mike Amendola and Roger Swor about the alleged discriminatory mistreatment by Gold Cross and Johnson. Amendola and Swor later sued Gold Cross and Johnson, claiming retaliation for assisting Lisdahl.

After a bench trial to a magistrate judge, the court found for defendants on Lisdahl's USERRA claims, dismissing his complaint with prejudice. A month later, a district judge granted defendants' motion for summary judgment in the retaliation cases of Amendola and Swor. These appeals followed.

## II.

Lisdahl does not appeal the district court's finding that he was promptly restored to employment as required by USERRA. He attacks the district court's ruling that a prima facie constructive discharge claim under USERRA requires evidence that Gold Cross or Johnson intended to force him out. After a bench trial, this court reviews the district court's findings of fact for clear error, and its legal conclusions de novo. *Lenz v. Wade*, 490 F.3d 991, 994 (8th Cir. 2007); *see also* Fed. R. Civ. P. 52(a). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

USERRA protects returning veterans and other uniformed service members when transitioning to civilian life, requiring reemployment in either the same position "or a position of like seniority, status and pay, the duties of which the person is qualified to perform." **38 U.S.C. §4313(a)(2)(A)**; *see generally* ***Clegg v. Ark. Dep't of Corrections***, 496 F.3d 922, 930 (8th Cir. 2007). After reemployment, USERRA prohibits discrimination against veterans with respect to any benefit of employment on the basis of their membership, application for membership, performance of service, application for service, or obligation to perform service in the uniformed services. **38 U.S.C. § 4311(a)**. A benefit of employment is "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice . . ." **38 U.S.C. §4303(2)**. Because USERRA was enacted to protect the rights of service members, it is construed broadly and "in favor of its military beneficiaries." *Clegg*, 496 F.3d at 930-31.

An employer violates USERRA when veteran status is a motivating factor in the employer's adverse action, unless the employer proves that the action would have been taken in the absence of membership in the armed services. *Maxfield v. Cintas Corp.*, 563 F.3d 691, 694 (8th Cir. 2009) (*Maxfield II*). The employee must initially show that military status was a motivating factor in an adverse employment decision, but an employer can then defeat the claim by proving "by a preponderance of evidence, that the action would have been taken despite the protected status." *Id.* In determining whether veteran status motivates the employer's conduct, all record evidence may be considered, including any explanation for the action taken. *Maxfield v. Cintas Corp.*, 427 F.3d 544, 551-52 (8th Cir. 2005)(*Maxfield I*).

The district court found that Lisdahl failed to present a prima facia case under USERRA, because he did not show any adverse employment action by Gold Cross or Johnson. Further, the court found no evidence that any particular employment action by Johnson or Gold Cross was motivated by anti-veteran animus, or that such animus was a motivating factor in prompting the action that was taken.

Lisdahl focuses his appeal on the constructive discharge claim, which is actionable under USERRA. *See Knowles v. Citicorp Mortgage, Inc.*, 142 F.3d 1082, 1085-86 (8th Cir. 1998). A constructive discharge occurs when an employer deliberately renders an employee's working conditions intolerable with the intent of forcing the employee to leave the employment. *Id.* at 1086. A plaintiff can satisfy the intent requirement by demonstrating that the resignation was a reasonably foreseeable consequence of the employer's actions. *Id.* The intolerability of the working conditions is judged by an objective standard; conditions are considered intolerable "if a reasonable employee would find them as such." *Bradford v. Norfolk Southern Corp.*, 54 F.3d 1412, 1420 (8th Cir. 1995).

Lisdahl claims the district court erred by requiring him to demonstrate not only that his working conditions at Gold Cross were objectively intolerable, but also that Gold Cross and Johnson intended to force him to quit. Lisdahl asserts that the

Supreme Court's decision in *Pennsylvania State Police v. Suders* limited any Eighth Circuit cases requiring an intent-to-force-out in order to prove constructive discharge under USERRA. *See **Pa. State Police v. Suders***, 542 U.S. 129, 147 (2004). In *Suders*, the Court held that in a Title VII action alleging hostile-work-environment sexual harassment by a supervisor, a constructive discharge claim is subject to an employer's affirmative defense that 1) no tangible employment action was taken; 2) the employer exercised reasonable care to prevent and correct harassment; and 3) the employee failed to take advantage of the employer's procedures for addressing workplace harassment. *See **id.***, 542 U.S. at 141-50. The Court described a constructive discharge claim as an objective inquiry asking: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" ***Id.*** at 141.

*Suders* did not interpret USERRA, much less address whether a USERRA constructive discharge claim requires a plaintiff to prove an employer's intent to force the employee to quit. Regardless, an intent requirement is implicit in the *Suders* test–the Court expressly described how the constructive discharge concept originated in the 1930's when the National Labor Relations Board developed the doctrine to address situations when employers deliberately forced employees to resign by creating intolerable working conditions in retaliation for engaging in union activities. ***Id.*** at 141.

Even assuming that *Suders* affects USERRA constructive discharge law, Lisdahl's claim still fails. The burden was on him to show that his status as a veteran was a motivating factor in his constructive discharge. *See **Maxfield II*** at 694; ***Knowles***, 142 F.3d at 1085-86; **38 U.S.C. § 4311(a)** (prohibiting only discrimination against uniformed service members "*on the basis of* that membership, application for membership, performance of service, application for service, or obligation") (emphasis added). Likewise, the burden was on Lisdahl to demonstrate that his working conditions at Gold Cross were objectively intolerable. ***Knowles***, 142 F.3d at 1086. The district court's findings of fact expressly reject Lisdahl's contention that

any purported discharge by Gold Cross was motivated by anti-veteran animus, or that the conditions at Gold Cross were objectively intolerable. This conclusion is well-supported by the record before the district court. The evidence showed at best a personality conflict between Johnson and Lisdahl. However, as in Title VII, "[p]etty slights and minor annoyances in the workplace, as well as personality conflicts and snubs by co-workers, are not actionable." **Sutherland v. Mo. Dep't of Corrections**, 580 F.3d 748, 752 (8th Cir. 2009). Reviewing the record as a whole and construing USERRA broadly, this court agrees with the district court's determination that there is insufficient evidence that Lisdahl experienced objectively intolerable working conditions upon his return to Gold Cross, or that Gold Cross took any actions against him on the basis of veteran status.

Further, constructive discharge claims fail as a matter of law where the employee has not given the employer a reasonable opportunity to correct the intolerable condition before the employee quits. *See* **Anda v. Wickes Furniture Co.**, 517 F.3d 526, 534 (8th Cir. 2008); **Knowles**, 142 F.3d at 1086 (noting that an employee's duty to act in a reasonable manner includes an obligation not to assume the worst and jump to conclusions); **Tidwell v. Meyer's Bakeries, Inc.**, 93 F.3d 490, 494 (8th Cir. 1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged."). In this case, Lisdahl took medical leave and never returned to Gold Cross. During his employment at Gold Cross after returning from Iraq, he never filed any grievances or voiced any concerns to Gold Cross about the alleged mistreatment by Johnson. Instead, Lisdahl simply resigned, offering a reason in sworn statements that is inconsistent with the explanation he now submits. The district court did not err in ruling that Lisdahl was not constructively discharged.

### III.

Amendola and Swor appeal the district court's grant of summary judgment to Gold Cross and Johnson on their USERRA retaliation claims. Summary judgment

is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This court reviews a district court's grant of summary judgment de novo, drawing all reasonable inferences, without resort to speculation, in favor of the non-moving party. *See Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004). Only genuine disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.*

USERRA prohibits an employer from discriminating in employment or taking "*any* adverse employment action" against any person because the person: "(1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter." **38 U.S.C. § 4311(b)** (emphasis added). This prohibition applies without regard to whether the person served in the uniformed services. *Id.* An employer violates USERRA when an employee's protected action (such as making a statement in support of a veteran's discrimination claim) is a motivating factor in the employer's adverse employment action, unless the employer proves that the action would have been taken in the absence of the employee's protected conduct. **38 U.S.C. § 4311(c)**.

Amendola and Swor argue that the district court incorrectly applied the "materially adverse" standard from Title VII jurisprudence in deciding their USERRA retaliation claims. To establish a retaliation claim under Title VII of the Civil Rights Act of 1964 (which forbids employment discrimination based on an individual's race, color, religion, sex, or national origin), a plaintiff must demonstrate that an objectively reasonable employee would have found the challenged action "materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

-11-

"Materially adverse" means the retaliatory act "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation marks and citation omitted). Minor slights and disagreements with supervisors are not protected by Title VII. *See id.* The requirement of materiality separates actionable, significant harm from trivial harms. *See id.* (noting that Title VII does not set forth "a general civility code for the American workplace," nor protect against "the ordinary tribulations of the workplace") (citations omitted).

Amendola and Swor argue that the plain language of the anti-retaliation provision of USERRA prohibits "*any* adverse employment action," not any *materially* adverse action. **38 U.S.C. § 4311(b)** (emphasis added). True, 38 U.S.C. § 4311(b) prohibits "any" adverse employment action—but it still requires an "adverse employment action," a term used throughout Title VII jurisprudence to denote a significant injury or harm. *See **Clegg***, 496 F.3d at 926 (defining "adverse employment action" as a "tangible change in working conditions that produces a material employment disadvantage" such as termination, cuts in pay or benefits, or changes that affect an employee's future career prospects, but not "minor changes in duties or working conditions, even unpalatable or unwelcome ones") (citations and internal quotation marks omitted). In *Burlington*, the Court established the standard for retaliation claims under Title VII, distinguishing the retaliation standard (42 U.S.C. § 2000-e3) from the discrimination standard (42 U.S.C. § 2000-e2). *See **Burlington***, 548 U.S. at 61-67. Although the discrimination provision explicitly limits actionable harm to actions "that affect employment or alter the conditions of the workplace," the retaliatory actions prohibited by Title VII are broader and not limited to harms that are employment-related—but even actionable retaliation must be "materially adverse." ***Burlington***, 548 U.S. at 62-68 (noting that Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm," and that an employee's decision to report discrimination "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience").

Similarly, the anti-retaliation protections of USERRA do not provide a remedy for trivial harms. As the district court noted: "Every court that has examined the question—at least every decision cited by the parties or located by this Court in its own research—of whether there is a materiality requirement in USERRA has held that there is." *See, e.g.*, **Crews v. City of Mt. Vernon**, 567 F.3d 860, 869 (7th Cir. 2009) (after reviewing the materiality requirement in Title VII retaliation actions, holding: "There is no reason to understand 'adverse employment action' differently in the USERRA context."); *see also* **Clegg**, 496 F.3d at 930 (acknowledging that claims under USERRA do not follow the three-step framework set forth in *McDonnell Douglas*, but noting that "the employee must still have suffered an adverse employment action in order to succeed on a claim."). As the Seventh Circuit noted in *Crews*, "textual differences between the anti-retaliation provisions of Title VII and USERRA suggest that the latter has a more limited scope." **Crews**, 567 F.3d at 869. Unlike the situation in *Burlington*, no comparable textual distinction exists between USERRA's anti-discrimination provision, 38 U.S.C. § 4311(a), and the anti-retaliation provision, § 4311(b). USERRA's anti-retaliation provision expressly limits actionable harm to "adverse employment action," not the broader "discrimination" prohibited by Title VII's anti-retaliation provision.

In his affidavit, Amendola asserts the following retaliation: (1) Johnson denied him vacation time and threatened him with a revised schedule designed to deny the use of earned vacation time; (2) Johnson indirectly communicated threats to him through a subordinate regarding his job security after he objected to any change in his established schedule; (3) Johnson required Amendola, an assistant captain, to attend captain meetings (captains supervise the paramedics assigned to their shifts; assistant team captains act as captains when the shift captain is away); (4) Johnson ridiculed him in front of other employees; (5) Johnson denied him paid overtime to address safety issues in his capacity as volunteer safety officer, an unpaid position at Gold Cross; (6) Johnson ridiculed and belittled his work on annual safety inspections; (7)

Johnson ignored him in the presence of other employees; and (8) Johnson raised his voice and spoke angrily toward him during meetings.

At his deposition, Amendola described the dispute about vacation time as related to scheduling matters, and said that Johnson had not taken any action about his scheduling. Amendola acknowledged that the captain meetings were changed to a day that better accommodated his schedule, and testified that he has, "[f]or the most part," been able to address safety issues during his regular shift. Amendola acknowledged that he has not been disciplined since Lisdahl returned from military leave, since Lisdahl's lawsuit began, or since his own lawsuit commenced. He also testified that he has not experienced any financial harm from Johnson's actions.

In his affidavit, Swor claims the following retaliation: (1) Johnson threatened to take away his company cell phone for repeatedly violating a restriction on use; (2) Johnson sent accusatory and threatening e-mails related to inconsequential matters; (3) Johnson angrily told him that he had no right to copy other employees on e-mails, and required him to sign a corrective action; (4) Johnson belittled and demeaned him during captain meetings; (5) Johnson refused his request for an interim assistant team captain to take Lisdahl's place when Lisdahl took medical leave (Lisdahl was his assistant captain); and (6) Johnson created an atmosphere of fear and intimidation.

With regard to Swor's complaint about the cell phone, Johnson had imposed a 500-minute limit per month on all company cell phones. Swor repeatedly exceeded the limit, and Johnson reminded him of it and asked him to abide by it. Swor was allowed to keep a company cell phone. As to Swor's e-mails to other employees and the corrective action, Johnson and Swor exchanged e-mails whether a carpet should be cleaned or replaced. Johnson thought it should be cleaned; Swor thought it should be replaced. Swor e-mailed other employees to solicit their thoughts. Johnson's superiors received the e-mail, found it inappropriate, and directed Johnson to discipline him. The two met, Swor signed a corrective action, and then Johnson

-14-

concluded that corrective action was not necessary and destroyed the corrective action. As to the assistant team captain, Johnson acknowledged refusing to allow Swor to name an assistant team captain while Lisdahl was on medical leave.

Applying the material adversity standard to the claims of Amendola and Swor, the actions of which Amendola and Swor complain do not rise to the level of actionable retaliation. These are the garden-variety complaints about minor slights and disagreements with supervisors that are not protected by USERRA. A federal court does not sit as a super-personnel department that oversees a company's general employment practices and guarantees to each employee a genial boss. *See, e.g.*, ***Gilbert v. Des Moines Area Cmty. Coll.***, 495 F.3d 906, 916 (8th Cir. 2007); ***Harvey v. Anheuser-Busch, Inc.***, 38 F.3d 968, 973 (8th Cir. 1994). Because the "retaliations" claimed by Amendola and Swor were not materially adverse employment actions, the district court did not err in granting Gold Cross and Johnson's motion for summary judgment.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____