# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2896

_____

| | | |
|---|---|---|
| Alana Crutcher-Sanchez, formerly known as Alana Smith, | * * * | |
| Plaintiff-Appellee, | * * | |
| v. | * * | |
| County of Dakota, Nebraska, | * * * | Appeal from the United States District Court for the District of Nebraska. |
| Defendant, | * * | |
| James L. Wagner, in his official and individual capacity, | * * * | |
| Defendant-Appellant, | * * | |
| Rodney Herron, in his official and individual capacity; Joe Ramirez, in his official and individual capacity, | * * * * | |
| Defendants. | * * * | |

_____

No. 11-2897

_____

| | | |
|---|---|---|
| Alana Crutcher-Sanchez, formerly known as Alana Smith, | * * * | |
| Plaintiff-Appellee, | * | |

v.                                 *
                                       *

County of Dakota, Nebraska,      *
James L. Wagner, in his official     *
and individual capacity,           *
                                         *

      Defendants,                 *
                                           *

Rodney Herron, in his official and   *
individual capacity,              *
                                         *

      Defendant-Appellant,      *
                                         *

Joe Ramirez, in his official and    *
individual capacity,              *
                                         *

      Defendant.                 *
                                         *

        _____

        No. 11-2898

        _____

Alana Crutcher-Sanchez,        *
formerly known as Alana Smith,     *
                                         *

      Plaintiff-Appellee,         *
                                         *

v.                                 *
                                         *

County of Dakota, Nebraska,      *
James L. Wagner, in his official     *
and individual capacity,           *
Rodney Herron, in his official and   *
individual capacity,              *
                                         *

      Defendants,                 *

|                                    | * |
| Joe Ramirez, in his official and   | * |
| individual capacity,               | * |
|                                    | * |
| Defendant-Appellant.               | * |

_____

Submitted: May 16, 2012
Filed: August 3, 2012

_____

Before MURPHY, BENTON and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Alana Lynn Crutcher-Sanchez, then known as Alana Lynn Smith, sued her former employer, Dakota County, Nebraska, under 42 U.S.C. §§ 1983 and 1985. She also sued Sheriff James L. Wagner, her supervisor Chief Deputy Rodney G. Herron, and Sergeant Joseph Ramirez. She claims Herron and Wagner created or fostered a sexually hostile work environment, and Herron and Ramirez conspired to deprive her of her civil rights.[1] The defendants moved for summary judgment based on qualified immunity, which the district court denied. The defendants appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms the denial of summary judgment to Herron, reverses the denial of summary judgment as to Wagner and Ramirez, and dismisses all other claims.

Crutcher-Sanchez asserts this court lacks jurisdiction because the appeal involves factual disputes. A denial of qualified immunity is immediately appealable.

---

[1]Crutcher-Sanchez abandoned her claim of race discrimination in violation of 42 U.S.C. § 1981. She also dropped her claim for sexual harassment against Ramirez and her claim for conspiracy against Wagner.

*Jones v. McNeese*, 675 F.3d. 1158, 1160 (8th Cir. 2012), *citing **Scott v. Harris***, 550 U.S. 372, 376 n.2 (2007).  A defendant may appeal a denial of qualified immunity only "to the extent that it turns on an issue of law." ***Fields v. Abbott***, 652 F.3d 886, 889-90 (8th Cir. 2011).  On appeal, this court resolves any factual disputes in Crutcher-Sanchez's favor, and reviews the denial of qualified immunity as a pure question of law. ***Tuggle v. Mangan***, 348 F.3d 714, 719 (8th Cir. 2003).  In this case, the defendants "principally challenge[] the district court's application of qualified immunity principles to the established summary judgment facts.  Because this raises a legal issue that does not 'require us to resolve any disputed issues of evidentiary sufficiency,' we have jurisdiction." ***Jones***, 675 F.3d at 1161.

I.

Crutcher-Sanchez, a correctional officer, worked at the Dakota County jail from October 2, 2006, until terminated on January 19, 2007.  She was a probationary employee at all times.  Crutcher-Sanchez attended new employee orientation, but never received the employee handbook with the county's sexual harassment policy, or any other instruction about sexual harassment in the workplace.

As the elected sheriff, Wagner had authority over the jail and its operations. He delegated much of his authority to Chief Deputy Herron.  Wagner asked Crutcher-Sanchez out several times. (She estimates between five and ten times, but recalls only two specific instances.)  Once, in his office, Wagner asked her to dinner; when she declined, he told her he "could not buy her a diamond ring, but could buy her a box of chocolates."  She replied she did not like chocolate and had enough diamond rings. Later, Wagner called her at the jail to ask her out; she again declined.  Crutcher-Sanchez complained to Herron about the sheriff's advances.  She said Wagner never said anything sexually explicit and did not act inappropriately toward her, other than asking her out.

Herron began pursuing Crutcher-Sanchez soon after she started at the jail. He called her at the jail to tell her she looked good in her uniform. He "looked her up and down," assigned her to the day shift ahead of more senior employees, and called her from the parking lot of her second job at a retail store on several occasions. About a month into her employment, Herron met Crutcher-Sanchez at a bar where she was drinking with friends. After the bar closed, he drove an intoxicated Crutcher-Sanchez to his house, where they began kissing. Crutcher-Sanchez testified she protested that "he was her boss and she needed to get back to her friends." Herron told her not to worry about it. They had sex. The next morning, Herron told her she could not tell anyone about the incident, because there would be trouble if Wagner or anyone else found out. According to Crutcher-Sanchez, during the next two months, the two had sex at least ten times. They also engaged in sexual activity in county vehicles while driving back from transport trips. Crutcher-Sanchez initiated some of the contacts. After one incident, Herron told her he loved her. Crutcher-Sanchez pretended to be asleep and did not respond. She acknowledged having sex with Herron willingly, except to the extent she protested the first time.

Ramirez was also a correctional officer when Crutcher-Sanchez began work. He was promoted to sergeant in January 2007, becoming her supervisor. In December 2006, Herron and Ramirez invited two other female correctional officers to a local bar during the work day to celebrate Herron's birthday. An intoxicated Herron flirted with one female officer, who rejected his advances. Arriving at 11 p.m., Crutcher-Sanchez saw Herron dancing with a woman who was a former inmate and a known drug addict. Herron asked Crutcher-Sanchez if she wanted to meet up with him later. The former inmate became jealous and told Crutcher-Sanchez to leave Herron alone. Crutcher-Sanchez left the bar and did not see Herron again that night. After the birthday outing, Herron began telling his coworkers, including Ramirez, that Crutcher-Sanchez was "stalking" him and that he needed to find a way to get rid of her. Even so, Herron continued to have sex with Crutcher-Sanchez, and the two spent Christmas day and New Year's day together.

Ramirez, at Herron's direction, issued Crutcher-Sanchez two disciplinary notices on January 11, 2007. The first was a reprimand for failing to follow the chain of command after she complained directly to Wagner that a female co-worker was given authority to run the control room despite a lack of law enforcement experience. The second warning was for failing to return special keys to the jail (the "pink keys"). She took the keys with her when leaving work one day, but turned around and headed back to the jail upon realizing she had them. This second warning said she would be disciplined or terminated if she failed to improve.

On January 15, Ramirez drafted a memo listing instances of her failures to follow policy and procedure, and placed it in her file. He testified that Herron told him to rephrase the letter because it was too vague. Ramirez did so. He concluded the letter by explaining, "These are the reasons why I am writing this letter of recommendation for termination of Officer Alana Smith." Herron then recommended Crutcher-Sanchez's termination. The next day, Crutcher-Sanchez went out drinking and spent the night at a male friend's house. She noticed several sheriff's vehicles outside her friend's house and suspected she would be followed and arrested if she tried to drive home. She contacted Herron and asked if he was having her followed. He said no, but confronted her the next day and accused her of having sex with her friend.

Two co-workers testified that they were with Ramirez when he received a call from Herron. They said Herron instructed Ramirez to fire Crutcher-Sanchez, to prepare a letter, and to copy Wagner's signature onto it. Ramirez and Wagner testified otherwise: that Wagner, not Ramirez, wrote the termination letter and that Ramirez never forged the sheriff's signature. Herron testified that he never saw the termination letter and had no input into its language. On January 19, Ramirez handed Crutcher-Sanchez the letter terminating her employment with the county, effective January 22, 2007.

Qualified immunity "protects 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" ***Clegg v. Arkansas Dep't of Corr.***, 496 F.3d 922, 931 (8th Cir. 2007), *citing **Cox v. Sugg***, 484 F.3d 1062, 1065 (8th Cir. 2007) (*quoting **Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982)) (alteration in original). A qualified immunity analysis involves: first, whether the facts alleged establish a violation of a constitutional or statutory right and second, whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. ***Johnson v. Phillips***, 664 F.3d 232, 236 (8th Cir. 2011), *citing **Pearson v. Callahan***, 555 U.S. 223, 232 (2009).

Denying qualified immunity, the district court ruled that "a reasonable juror could draw inferences of discrimination, harassment, or conspiracy."[2] Regarding Crutcher-Sanchez's claim that Ramirez and Herron conspired to violate her constitutional rights in violation of 42 U.S.C. § 1985(3), the district court found issues of fact whether the defendants acted outside the scope of their employment for personal reasons, and: "There is at least some evidence that suggests an agreement among the defendants to deprive the plaintiff of rights."

---

[2] On appeal, Crutcher-Sanchez also mentions a claim for quid pro quo sexual harassment. She did not plead the claim in her Second Amended Complaint and stated in her opposition to a motion to dismiss that she was not bringing such a claim. The district court did not address the claim, though it mentioned quid pro quo harassment in the order denying summary judgment. This appeal does not consider a claim of quid pro quo sexual harassment against Herron.

A.  Sexual Harassment by Herron

"Sexual harassment by state actors violates the Fourteenth Amendment and establishes a section 1983 action."  *Tuggle*, 348 F.3d at 720.  To prove a hostile-work-environment sexual harassment claim, Crutcher-Sanchez must show (1) she was a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) that it "affected a term, condition, or privilege of employment;" and (5) that her employer knew or should have known of the harassment and failed to take appropriate remedial action.  *Sutherland v. Missouri Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009), *citing Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975, 979 (8th Cir. 2003).  On appeal, Herron contends that Crutcher-Sanchez did not sufficiently show the second and fourth elements of her claim.

In regard to the second element – whether Crutcher-Sanchez was subject to unwelcome harassment – Herron argues that their relationship was consensual and thus any harassment was welcome.  He emphasizes that Crutcher-Sanchez sometimes initiated contact, spent Christmas day with him, engaged in mutual sexual activity in police vehicles, and went to his house several times to have sex.  However, voluntary sexual activity may also be unwelcome harassment, a question that in this case "turns largely on credibility determinations committed to the trier of fact." *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 68 (1986).  Crutcher-Sanchez testified that the harassing conduct began shortly after she started work at the jail and included Herron "looking her up and down" during work, driving to the parking lot of her second job while repeatedly calling her on the phone, subjecting her to constant sexual attention, and asking her not to tell anyone about their sexual relationship.  *See Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) ("[S]exual harassment includes sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.").  Crutcher-Sanchez made a sufficient showing that Herron's conduct toward her was unwelcome harassment.

For the fourth element, Crutcher-Sanchez must show harassment "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Tuggle*, 348 at 720, *citing* *Meritor*, 477 U.S. at 67 (citation and quotation omitted). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Sexual harassment "standards are demanding – to be actionable, conduct must be extreme and not merely rude or unpleasant." *Alagna*, 324 F.3d at 980. "More than a few isolated incidents are required," and the alleged harassment must be "so intimidating, offensive, or hostile that it poisoned the work environment." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999). This court examines the totality of the circumstances to determine if the environment was sufficiently hostile. *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006). This analysis includes examining the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Duncan v. General Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002), *quoting* *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Based on the facts the district court likely assumed, Herron's acts created a hostile work environment. Herron – chief deputy and jail administrator during Crutcher-Sanchez's employment – had supervisory authority over her. There is evidence that:

- Crutcher-Sanchez hesitated and voiced her concern the first time she and Herron had sex
- Herron asked her to keep their relationship a secret
- She was unaware of the county's harassment policy or to whom to complain
- He took advantage of her when she was intoxicated and vulnerable
- She felt harassed by Herron's leering and following her to her second job
- Her co-workers ridiculed her as Herron's stalker, at his urging

- She was subject to sexual attention by Herron during almost all her employment with the county
- She was fired for ending her sexual relationship with Herron

Next, this court must determine whether the right Herron violated was clearly established. "This second step is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008), *quoting Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006). This court looks to the state of the law at the time of the incident. *Shekleton v. Eichenberger*, 677 F.3d 361, 367 (8th Cir. 2012). "Even in the complete absence of any decisions involving similar facts, a right can be 'clearly established' if a reasonable public official would have known that the conduct complained of was unlawful." *Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 755 (8th Cir. 2002).

According to Herron, there is no case in this jurisdiction where the harasser was found liable under section 1983 for behavior like his. He argues that the right to be free from sexual harassment is not specific enough to satisfy the Supreme Court's requirement of a particularized right in *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (citation omitted)). However, "the right to be free from gender discrimination is clearly established." *Wright v. Rolette Cnty,*, 417 F.3d 879, 886 (8th Cir. 2005), *quoting Peterson v. Scott Cnty.*, 406 F.3d 515, 526 (8th Cir. 2005). It was clearly established in 2007 that a supervisor's attempt to have sex with a subordinate violates the subordinate's civil rights. *See Moring v. Ark. Dep't of Corr.*, 234 F.3d 452, 456 (8th Cir. 2001) (affirming liability against a supervisor when the sexual harassment consisted of his attempt to have sex with the subordinate one time).

-10-

Based on the facts the district court likely assumed, the district court correctly denied Herron summary judgment based on qualified immunity.

## B. Conspiracy by Ramirez and Herron

Crutcher-Sanchez alleges that Ramirez and Herron conspired to violate her constitutional rights in violation of 42 U.S.C. § 1985(3). In order to show a civil rights conspiracy under section 1985(3), she must prove: (1) that the defendants conspired, (2) with the intent to deprive her of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that she was injured or deprived of having and exercising any right or privilege of a citizen of the United States. *See* ***Larson ex rel. Larson v. Miller***, 76 F.3d 1446, 1454 (8th Cir. 1996).

Crutcher-Sanchez asserts that Ramirez and Herron conspired for personal reasons to terminate her employment, depriving her of her constitutional right to equal protection. Her claim is defeated by her own pleadings.

Crutcher-Sanchez fails to demonstrate the first prong, the existence of a conspiracy. "A conspiracy claim requires evidence of specific facts that show a 'meeting of the minds' among conspirators." ***Barstad v. Murray Cnty.***, 420 F.3d 880, 887 (8th Cir. 2005), *citing* ***Rogers v. Bruntrager***, 841 F.2d 853, 856 (8th Cir. 1988). A government entity cannot conspire with itself. ***Id.***, *citing* ***Cross v. General Motors Corp.***, 721 F.2d 1152, 1156 (8th Cir. 1983). However, government agents may conspire by acting beyond the scope of their authority or for their own benefit. *See* ***Garza v. City of Omaha***, 814 F.2d 553, 556 (8th Cir. 1987). Crutcher-Sanchez's pleadings defeat her claim that Herron and Ramirez were acting beyond the scope of their authority or for their own benefit. She pleaded only that "Defendants Herron and Ramirez commit the aforementioned torts while acting within the course and

-11-

scope of their employment and while furthering the business of Dakota County." A plaintiff who pleads only that the government actor "acted in the course and scope of '[his] employment' fail[s] to demonstrate the existence of a conspiracy." ***Barstad***, 420 F.3d at 887. The district court erred in denying Herron and Ramirez summary judgment on the conspiracy claim.

## C. Sexual Harassment by Wagner

Crutcher-Sanchez alleges that Wagner subjected her to a sexually hostile work environment by asking her out several times. The district court denied him summary judgment, concluding there were genuine issues of material fact about the severity and pervasiveness of Wagner's conduct. Viewing the facts most favorably to Crutcher-Sanchez, Wagner's conduct was not sufficiently severe or pervasive to create a sexually hostile work environment. The only allegations against Wagner were that he offered her a box of chocolates and asked her out several times. While inappropriate, his acts do not reach the high threshold of "so intimidating, offensive, or hostile that it poisoned the work environment." ***Scusa***, 181 F.3d at 967. Crutcher-Sanchez fails to show that Wagner's actions affected her employment, as required to make a colorable claim of sexually hostile work environment. *See* ***Sutherland***, 580 F.3d at 751. The district court erred in denying Wagner summary judgment.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed in part, reversed in part, and the case remanded for proceedings consistent with this opinion.

———————————————