# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2482

_____

Lisa Vajdl,

        Appellant,

    v.

Mesabi Academy of Kidspeace, Inc.;
Kidspeace Corporation; Michael
Muehlberg,

        Appellees,
_____

Equal Employment Opportunity
Commission,

        Amicus on Behalf of
        Appellant.

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: January 10, 2007
Filed: April 25, 2007

_____

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Lisa Vajdl filed a Title VII suit against her employer, Mesabi Academy of
KidsPeace, ("the Academy") alleging sexual harassment, retaliation, and constructive

discharge. The district court[1] granted the Academy's motion for summary judgment on all three claims. Vajdl appeals. We affirm.

## I. *Background*

The Academy, a non-profit organization licensed by the Minnesota Department of Corrections, provides residential care along with educational and vocational training to male youths convicted of violent crimes, including rape and murder. The Academy hired Vajdl to work as a youthcare worker at the Academy on August 18, 2003. Vajdl left the Academy in February 2004.

During her training and orientation, Vajdl learned that she would be working with serious sex offenders in the sex-offender unit. Over the course of her seven-month employment in the sex-offender unit, several youths made physical threats and sexual comments to Vajdl. In addition, three colleagues repeatedly engaged in inappropriate conduct towards her. Vajdl reported the three co-workers to her supervisor after months of such conduct and comments. The Academy immediately sanctioned the co-workers and the harassment ended.

The day after filing her complaint, Vajdl received a written warning from the head of the sex-offender unit requiring her to receive permission from her shift supervisor before issuing sanctions to the inmates. Sanctions represent one method used by Academy personnel to punish inmates for inappropriate conduct and can range from the loss of minor privileges to confinement and isolation. Vajdl alleged that the Academy issued the warning in retaliation for her complaints against co-workers. The Academy, on the other hand, contends that it issued the warning based on Vajdl's work performance and her possible misuse or overuse of inmate sanctions.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Vajdl alleges that the harassment by her co-workers and the inmates, combined with the Academy's retaliation, forced her to leave the Academy. Specifically, Vajdl claims that she was so traumatized by her experience at the Academy that her doctor instructed her to resign. After her departure, Vajdl filed a timely claim with the Equal Employment Opportunity Commission (EEOC) and subsequently received a Notice of Right to Sue from the EEOC. She then filed this Title VII suit alleging sexual harassment, constructive discharge, and retaliatory discharge.

## II. *Discussion*

We review de novo a grant of summary judgment, considering the facts in the light most favorable to the nonmoving party. *Arnold v. Nursing & Rehab. Ctr. at Good Shepard, LLC*, 471 F.3d 843, 845 (8th Cir. 2006). Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.*

### A. *Hostile Work Environment*

"Sexual discrimination that creates a hostile or abusive work environment is a violation of Title VII of the Civil Rights Act of 1964." *Hall v. Gus Constr. Co., Inc.*, 842 F.2d 1010, 1013 (8th Cir. 1988). A hostile work environment "arises when sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.* (internal quotations and citations omitted).

Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 846 (8th Cir. 2006) (requiring hostile work environment plaintiff to "clear a high threshold to demonstrate actionable harm"); *Al-Zubaidy v.*

*TEK Indust., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) (holding that lower courts must apply "demanding harassment standards" when considering hostile work environment claims); *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1078 (8th Cir. 2006) (holding "Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight").

To establish a prima facie hostile work environment claim, a plaintiff must prove: (1) that she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999).

The parties agree that Vajdl has satisfied the first three elements of the prima facie claim. We focus first on whether Vajdl suffered an adverse employment action affecting the term, condition, or privilege of employment. Vajdl points to the offensive conduct of co-workers and the inmates to prove that a hostile work environment forced her to leave her employment. As an initial matter, we consider it proper to distinguish the conduct of co-workers from that of the facility's inmates.

### 1. *The Inmates*

The Academy and similar institutions house some of the nation's youngest and most violent criminal offenders. The operation and atmosphere of these institutions differ substantially from typical work environments and warrant specialized legal analysis. "Prisoners, by definition, have breached prevailing societal norms in fundamentally corrosive ways. By choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior." *Slayton v. Ohio Dept. of Youth Serv.*, 206 F.3d 669, 677 (6th Cir. 2000).

As part of its rehabilitation program, the Academy encourages inmates to verbalize their anger, frustrations, and, in the sex-offender division where Vajdl worked, sexual fantasies. To impose liability upon the Academy for the inappropriate sexual expressions of severely troubled youth would not be reasonable without evidence of special circumstances.[2] We, therefore, conclude that, in the absence of special circumstances not present here, the conduct of inmates cannot be attributed to an employer in order to show that the harassment affected a term, condition, or privilege of employment.

## 2. *The Co-Workers*

Vajdl's claim stands or falls on the proof that her co-workers' harassing conduct subjectively and objectively affected a term, condition, or privilege of employment. *Bowen v. Mo. Dep't of Soc. Serv.*, 311 F.3d 878, 883 (8th Cir. 2002).

Vajdl alleges that three co-workers harassed her in various ways. The overwhelming majority of Vajdl's complaints focus upon the conduct of Michael Muehlberg. According to Vajdl, Muehlberg would frequently comment to Vajdl about her body. He also once touched the bangs of her hair. Additionally, he wiped water off her pant leg after one of the inmates splashed her at the pool. In an effort to court her, he repeatedly suggested that they go on dates and that she leave her current boyfriend. Muehlberg once telephoned her at home. He also offered to buy her a drink and to give her a ride home.

---

[2]We note, however, that there may be limited circumstances where liability for prisoner conduct may be properly attributed to the prison facility. *Slayton*, 206 F.3d at 677 (stating that liability to facility attaches where guards "encouraged, endorsed, and even instigated the inmates' harassing."); *Randolph v. Ohio Dept. of Youth Serv.*, 453 F.3d 724, 734 (6th Cir. 2006) (holding that liability to facility attaches where co-workers sat idly by as plaintiff was subjected to multiple physical attacks).

Similarly, the conduct of another co-worker, Joel Lawson, amounts largely to repeated requests for dates. A third co-worker, John Gustafson, also made a series of inappropriate comments about Vajdl's body during the two-week period that the two worked together. Viewed in the light most favorable to Vajdl, this conduct, neither objectively nor subjectively supports a claim of harassment so severe or pervasive as to alter a term, condition, or privilege of Vajdl's employment.

The objective standard for evaluating harassment is set forth in this circuit in *Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir. 2002). In *Duncan*, the plaintiff alleged that a co-worker repeatedly petted her hand; told her he wanted to have a relationship with her; requested that she make a sketch of a planter, shaped like a slouched man with a hole in the front of his pants that allowed for a cactus to protrude; put up a poster portraying the plaintiff as president of "Man Hater's Club of America," and requested that she type a draft of beliefs of "He-Men Women Hater's Club." *Id*. at 931–33. Further, Duncan was also required to use a computer with a screen saver displaying a picture of a naked woman. *Id*. at 931. Duncan's harasser also kept a penis-shaped pacifier in his desk which he showed Duncan. *Id*. Duncan's harasser once forced her to go with him to a bar. *Id*. at 932. Despite this offensive behavior, we decided that Duncan failed to "clear the high threshold" of showing that the conduct was so severe or pervasive as to alter a term, condition, or privilege of the plaintiff's employment. *Id*. at 934.

Objectively, the behavior Vajdl alleges does not reach the *Duncan* threshold. Whether an environment was objectively hostile or abusive must be judged by looking at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *Id*. at 884. In *Duncan*, for example, the conduct occurred over three years. Here, Vajdl was employed by the Academy for less than eight months. Muehlberg's conduct occurred mostly within a

three-month window. Further, Vajdl does not allege that she felt physically threatened by the offensive conduct. In light of these factors and our holding in *Duncan,* the conduct endured by Vajdl cannot objectively support a claim of harassment so severe or pervasive as to alter a term, condition, or privilege of her employment.

Subjectively, the record evidence shows that Vajdl was justifiably annoyed by the conduct of her co-workers; however, she has not shown severe or pervasive harassment as required by our precedents. For example, in describing her reaction to Muehlberg's conduct, Vajdl stated, "I took it as a way of flirting. An absurdity." When Muehlberg called her at home, she stated that the conversation "was ridiculous, I don't know, it was ridiculous. . . . It was just things over nothing." Likewise, she also characterized conversations with Lawson as flirting. In her deposition she stated, "When I'd come up the stairs, [Lawson would] kick me in the ankles, not like, you know, viciously, but just a tap on the ankle."

There can be no question that this conduct is offensive, juvenile, and inappropriate for any workplace. However, we cannot say that this conduct creates a genuine issue of material fact whether the harassment affected a term, condition, or privilege of employment. Given this holding, we need not consider whether the Academy knew or should have known of the harassment and failed to take prompt and effective remedial action.

B. *Retaliation Claim*

In order to prove retaliation, a plaintiff must show, "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405, 2416 (2006) (internal quotation omitted).

"We believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id*.

"The new standard attempts to find employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*.

Vajdl contends that after she filed her complaint with her superior, the Academy retaliated against her by restricting her ability to sanction inmates. The record shows that Vajdl's allegation is largely a subjective harm. In her deposition, Vajdl admits that her shift managers "never really enforced [the restriction] on me." She also said that "there wasn't a real problem. . . . [The restriction] was a problem with me because it made me feel worthless." Viewing the evidence in a light most favorable to Vajdl, no reasonable worker would likely be dissuaded from making or supporting a charge of discrimination based upon the Academy's requirement that she seek supervisor approval before imposing discipline on a juvenile inmate. Accordingly, we affirm the judgment of the district court granting summary judgment on the retaliation claim.

## C. *Constructive Discharge*

Vajdl also argues that the district court erred in dismissing her constructive discharge claims. An employee is constructively discharged when an employer deliberately renders the employee's working conditions intolerable and thus forces her to quit her job. *West v. Marion Merrell Dow, Inc*., 54 F.3d 493, 497 (8th Cir. 1995). A constructive discharge arises only when a reasonable person would find her working conditions intolerable. *Id.* "An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." *Id*. at 498.

-8-

Neither party disputes that the harassing conduct from Vajdl's co-workers ceased before she resigned. She argues, however, that she was so traumatized by the entire experience that she had to leave. Viewed in the light most favorable to Vajdl, the record does not support the presence of objectively intolerable working conditions. A constructive discharge claim requires the plaintiff to show "the employer created the intolerable conditions intending to force the plaintiff to quit." *Smith v. World Ins. Co.*, 38 F.3d 1456, 1462 (8th Cir. 1994). Vajdl fails to produce evidence suggesting her employer intentionally created an intolerable work condition in an effort to cause her to resign.

## III. *Conclusion*

For the reasons stated, we affirm the judgment of the district court.

_____