

# In the
# Missouri Court of Appeals
## Western District

THE SCHUMACHER GROUP, LTD, )
ET AL., )
 ) **WD78341**
   **Respondents,** )
 ) **OPINION FILED:**
v. ) **November 17, 2015**
 )
JAMES PRICE SCHUMACHER, ET )
AL., )
 )
   **Appellants.** )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Kathleen A. Forsyth, Judge

Before Division One: Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge
and Cynthia L. Martin, Judge

James Price Schumacher[1] ("James") and Cindy Sue Davis ("Davis") appeal the

trial court's entry of summary judgment on counterclaims they asserted. James and Davis

argue that the trial court erred in granting summary judgment because (1) the

counterclaims were not barred by res judicata or collateral estoppel; (2) the counterclaims

---

[1]Because this case involves members of the same family, some first names are used for clarity. No disrespected is intended.

were not asserted against improper parties; and (3) summary judgment was granted after the counterclaims had been amended. Finding no error, we affirm.

## Factual and Procedural Background[2]

This case reflects another chapter in the continuing saga of protracted litigation between family members regarding several trusts and business entities. The disputes have been before this court on two prior occasions. *Schumacher v. Schumacher*, 303 S.W.3d 170 (Mo. App. W.D. 2010) ("*Schumacher I*"); *Schumacher v. Austin*, 400 S.W.3d 364 (Mo. App. W.D. 2013) ("*Schumacher II*"). We will not belabor the complicated relationships and transactions capably described in *Schumacher I* and *Schumacher II* but will summarize the litigious history in this case only to the extent necessary to explain our resolution of this appeal.

In 1976, Louis E. Schumacher ("Father") created an irrevocable trust (the "1976 Trust"). Father named his wife, Sara N. Schumacher ("Mother"), and son, Louis Edward Austin ("Austin"), as trustees (collectively "the 1976 Trustees"). The 1976 Trust provided that income was to be distributed in equal shares to each of four children-- James, Davis, Austin, and John Griffin Schumacher ("John")--during Father's lifetime and for a period of five years thereafter. The 1976 Trust terms provided that the trust would terminate five years after Father's death with the remaining principal to be distributed to Father's then-living descendants.

---

[2]In reviewing the grant of summary judgment, we view the record in the light most favorable to the nonmoving party and give the non-moving party the benefit of all reasonable inferences. *Rainey-Hicks v. Missouri Accreditation of Programs for Children & Youth*, 466 S.W.3d 699, 701 (Mo. App. W.D. 2015).

In 1984, the 1976 Trustees formed The Schumacher Group, Ltd. ("the Corporation"). The 1976 Trust was the Corporation's sole shareholder. Mother was president of the Corporation.

In 1986, Father and Mother created a revocable trust ("the 1986 Trust") and named themselves as trustees. Father died in May 1998. When Father died, the 1986 Trust split into three separate trusts: a qualified terminable interest property trust ("the QTIP Trust"), a marital trust ("the Marital Trust"), and a family trust ("the Family Trust"). Mother was the sole trustee of these trusts. James, Davis, Austin, and John were beneficiaries of the QTIP Trust and the Family Trust.

In January 2001, Trustee Austin[3] and Mother, as co-trustee of the 1976 Trust and as sole trustee of the QTIP Trust, the Marital Trust, and the Family Trust, created a limited partnership ("the Partnership") and a limited liability company ("the LLC"). The LLC was the general partner of the Partnership. The 1976 Trustees conveyed the 1976 Trust assets to the Partnership and the LLC in exchange for a .5 percent interest in the Partnership and a .37 percent interest in the LLC. Then Mother conveyed all of the assets of the QTIP Trust, the Marital Trust, and the Family Trust to the Partnership and the LLC. Sometime prior to May 2003, the 1976 Trustees exchanged the 1976 Trust's .5 percent interest in the Partnership and .37 percent interest in the LLC for shares in the Corporation.

---

[3]When referring to Austin in his capacity as a trustee of the 1976 Trust, we refer to him as "Trustee Austin."

3

Per its terms, the 1976 Trust terminated in May 2003, five years after Father's death. At that time, and given the aforesaid transactions, shares in the Corporation were the only asset held in the 1976 Trust. The shares were distributed by the 1976 Trustees to the named beneficiaries of the 1976 Trust--James, Davis, Austin, and John.

In November 2005, James and Davis (collectively "the Beneficiaries") filed a lawsuit against Austin, as an individual and in his capacity as Trustee Austin; Mother, as an individual and in her capacity as a co-trustee of the 1976 Trust, and as trustee of the QTIP Trust and the Family Trust; and John, as an individual ("Suit I"). Suit I asserted several claims that, loosely summarized, challenged whether the above-described transactions involving the assets of the 1976 Trust, the QTIP Trust, and the Family Trust breached fiduciary obligations owed to the Beneficiaries. No transactions involving the Marital Trust were at issue in Suit I.

The trial court entered a declaratory judgment in Suit I in September 2008. The judgment declared that Trustee Austin and Mother violated duties owed to the Beneficiaries when they converted the assets originally held by the 1976 Trust, the QTIP Trust, and the Family Trust. The trial court declared the Partnership and LLC and the transactions by which they were funded void *ab initio*. Trustee Austin and Mother were directed "to take all steps necessary to transfer legal title to all property acquired by the Corporation, Partnership and LLC from, or traceable to, the [1976 Trust] and the QTIP and Family trusts back to the trust estate from which the property was transferred or is traceable." Trustee Austin and Mother also were directed to provide the named

4

beneficiaries of each of those trusts a revised accounting, and to distribute the assets of the 1976 Trust to the beneficiaries of that trust according to the revised accounting.

Trustee Austin and Mother appealed the Suit I judgment, resulting in our opinion in *Schumacher I.* We affirmed the Suit I judgment in part and reversed in part, and remanded the case to the trial court to address affirmative defenses that had been asserted. Following proceedings on remand, the trial court entered judgment once again in favor of the Beneficiaries. An appeal from the judgment on remand was later dismissed.

In the meantime, in August 2011, a second lawsuit was filed. This lawsuit was initiated by Austin individually;[4] Mother, individually and as trustee of the Marital Trust; the Corporation; and three limited liability companies[5] ("Suit II"). Suit II named the Beneficiaries as defendants and sought damages and to quiet title based upon the fact that the Beneficiaries had filed numerous *lis pendens* to cloud title to real estate owned by the plaintiff limited liability companies that negatively impacted loan transactions to the financial detriment of all of the named plaintiffs, particularly plaintiffs who had personally guaranteed loans to the limited liability company plaintiffs.

While Suit II was pending, the trial court in Suit I entered a satisfaction of judgment in January 2012. The Beneficiaries appealed the satisfaction of judgment,

---

[4]The caption of the petition filed in Suit II simply lists Austin as a plaintiff without further reference to his capacity. Paragraph 5 of the petition, however, identifies Austin as an individual. At no place does the petition in Suit II assert claims on Austin's behalf in any representative capacity.

[5]The three limited liability companies named as plaintiffs in Suit II were: Nu Orleans II, LLC (whose members were Austin, Mother, and two individuals not the subject of this case, with Austin serving as the manager); Schumacher Station Development Company, LLC (whose members were the Marital Trust, the QTIP Trust, and the Family Trust, with Mother serving as the manager); and Hacienda II, LLC (whose sole member was Schumacher Station Development Company, LLC, with Mother serving as the manager).

5

arguing that some of the shares of the Corporation had not been distributed by the 1976 Trustees to the beneficiaries of that trust.

While the second appeal in Suit I was pending, two matters of procedural significance occurred in Suit II. First, Mother died in April 2012. Following the filing of suggestions of death, plaintiffs in Suit II sought leave to substitute successor trustees for Mother as trustee of the Marital Trust. Those successor trustees were Austin and John ("the Marital Trust Successor Trustees"). Until this point, Austin was only named as a plaintiff in Suit II in his individual capacity.[6] And until this point, John was not at all involved in Suit II. After this point, Austin remained a plaintiff in his individual capacity, and Austin and John were plaintiffs in their representative capacities as the Marital Trust Successor Trustees.

Second, the Beneficiaries filed an amended answer in June 2012, which asserted five counterclaims. The counterclaims, loosely summarized, sought recovery of attorneys' fees incurred in Suit I; damages because 1976 Trust, QTIP Trust, and Family Trust assets were wasted by the assertion of frivolous affirmative defenses in Suit I; another accounting of the 1976 Trust, QTIP Trust, and Family Trust assets; removal of the trustees of the 1976 Trust, QTIP Trust, and Family Trust; and a finding that Trustee Austin and Mother conspired to deprive the Beneficiaries of benefits under the 1976 Trust, QTIP Trust, and Family Trust in several ways, including by the creation of the limited liability companies named as plaintiffs in Suit II. Although the introductory paragraph of the counterclaims provided that same were being asserted against "the

[6]*See* footnote number 4.

6

Plaintiffs [Mother] and Austin," in fact, in the allegations applicable to all counts, the counterclaim defendants are identified as "[Mother] as Trustee" of the QTIP Trust and the Family Trust, and "[Mother] and Austin" as co-trustees of the 1976 Trust. [L.F. 591] Further, in that same section of the counterclaims, although the Beneficiaries assert that "Plaintiffs [Mother] and Austin" were found in Suit I to have breached fiduciary duties to the Beneficiaries, in fact, the declaratory judgment in Suit I did *not* enter a judgment against Austin individually, but rather entered judgment against "Defendant Trustees and [Mother]." [L.F. 269-71]

The Suit II plaintiffs filed a reply in response to the Beneficiaries' counterclaims, and among other things, asserted as an affirmative defense that the trial court lacked jurisdiction to determine the counterclaims because the persons against the counterclaims were actually asserted were not parties to Suit II.

In September 2012, Austin and the Marital Trust Successor Trustees filed a motion for summary judgment on the Beneficiaries' counterclaims. Austin and the Martial Trust Successor Trustees alleged: (1) that the counterclaims were barred by res judicata and/or collateral estoppel given the judgment entered in Suit I; (2) that the trial court lacked jurisdiction over the counterclaims because they sought judgment against non-parties to Suit II; and (3) that the counterclaims were moot because the 1976 Trust, the QTIP Trust, and the Family Trust had all been terminated.[7] In response to the summary judgment motion, the Beneficiaries argued that summary judgment was not

---

[7]As previously noted, the 1976 Trust terminated by its terms in 2003. In April 2012, the QTIP Trust and Family Trust terminated by their respective terms on Mother's death.

proper because (1) their counterclaims were not barred by res judicata and/or collateral estoppel, and (2) Suit I remained the subject of a pending appeal taken from the satisfaction of judgment. The Beneficiaries did not respond to the summary judgment motion's assertion that the trial court lacked jurisdiction to entertain the counterclaims because they were asserted against non-parties to Suit II.

In March 2013, we issued our Opinion in *Schumacher II*, the appeal from the Suit I satisfaction of judgment. We agreed that additional shares of stock in the Corporation remained to be distributed to the beneficiaries of the 1976 Trust. We set aside the satisfaction of judgment in Suit I and remanded the case for further proceedings.

In April 2013, the trial court in Suit II dismissed Mother as a counterclaim defendant given her death. The Beneficiaries did not object to Mother's dismissal but instead contended in related pleadings that "[t]he entities and the remaining trustees are the necessary parties to determine . . . [their] Counterclaims."

Shortly after Mother was dismissed as a counterclaim defendant, the Beneficiaries sought and were granted leave to file amended counterclaims. The Beneficiaries' amended counterclaims restated their original five counterclaims verbatim, once again asserting claims against Mother and Trustee Austin as co-trustees of the 1976 Trust, and against Mother as trustee of the QTIP Trust and Family Trust. In addition, the amended counterclaims added three new claims against Trustee Austin (with respect to the 1976 Trust) and against Austin and John as successor trustees for Mother with respect to the 1976 Trust, the QTIP Trust, and the Family Trust. The three new claims were for breach of fiduciary duty as to the 1976 Trust, the QTIP Trust, and the Family Trust; breach of

8

fiduciary duty as to the QTIP Trust and the Family Trust; and for a declaration of continuing breaches of fiduciary duties as to the 1976 Trust, the QTIP Trust, and the Family Trust.

The Suit II plaintiffs replied to the amended counterclaims and once again asserted, among other things, the affirmative defense that the counterclaim defendants were non-parties to Suit II, leaving the trial court with no jurisdiction to determine the counterclaims. In asserting this defense, the Suit II plaintiffs specifically noted the Beneficiaries' failure to abide by Rule 55.32.[8]

In March 2014, the Suit II plaintiffs voluntarily dismissed their claims against the Beneficiaries.

In December 2014, the trial court in Suit I entered a second amended satisfaction of judgment from which no appeal was taken.

On December 31, 2014, the trial court in Suit II entered its judgment ("Judgment") granting the motion for summary judgment filed by Austin and the Marital Trust Successor Trustees regarding the Beneficiaries' counterclaims. The Judgment did not include findings of fact or conclusions of law.

Beneficiaries filed this timely appeal.

**Standard of Review**

"The standard of review when considering an appeal from an entry of summary judgment is essentially *de novo*." *Rainey-Hicks*, 466 S.W.3d at 703. "As such, we apply the same criteria as the trial court to determine whether summary judgment was

---

[8]All citations to the Rules are to *Missouri Court Rules Volume I--State* (2015).

9

appropriate." *Id.* "Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; Rule 74.04(c)(6). "When considering whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party and give the non-moving party the benefit of all reasonable inferences." *Rainey-Hicks*, 466 S.W.3d at 703. "We will affirm the grant of summary judgment under any theory that is supported by the record." *Id.*

"A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) 'that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one' of the elements of the non-movant's claim; or (3) 'that there is no genuine dispute as to the existence of facts necessary to support movant's properly pleaded affirmative defense.'" *Ditto, Inc. v. Davids*, 457 S.W.3d 1, 8-9 (Mo. App. W.D. 2014) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011)).

**Analysis**

Despite the complicated history in this case, our task on appeal is straightforward. We will affirm the trial court's grant of summary judgment in Suit II on any basis supported by the record, including any one of the three grounds referenced in the motion for summary judgment. *Rainey-Hicks*, 466 S.W.3d at 703.

The Beneficiaries assert two points on appeal. First, they assert that it was error to grant summary judgment on their counterclaims because the claims were not barred by

10

res judicata or collateral estoppel given the disposition of Suit I. Because we conclude that the trial court properly could have granted summary judgment on the counterclaims because they were asserted against non-parties, we need not address this point on appeal.

In their second point on appeal, the Beneficiaries allege that it was error to grant summary judgment on the basis that the counterclaims were not named against the proper parties. The Beneficiaries misapprehend the issue presented to the trial court by the motion for summary judgment. The issue was not whether the proper parties were named, but whether non-parties were named, as counterclaim defendants.

Austin and the Marital Trust Successor Trustees argued in their summary judgment motion that summary judgment was proper because the trial court lacked jurisdiction over the counterclaims as they sought the entry of a judgment against trusts and/or trustees who were not parties to Suit II. We agree.

The amended counterclaims were filed in response to the claims asserted by the plaintiffs in Suit II. The named plaintiffs in Suit II were Austin (individually); Austin and John as the Marital Trust Successor Trustees; the Corporation; and three limited liability companies. The amended counterclaims asserted no claims against these plaintiffs. Instead, the amended counterclaims reasserted five claims against Trustee Austin and Mother as co-trustees of the 1976 Trust, and against Mother as trustee of the QTIP Trust and the Family Trust. And the amended counterclaims asserted three new claims against Trustee Austin as co-trustee of the 1976 Trust, and Austin and John as successor trustees for Mother of the 1976 Trust, the QTIP Trust, and the Family Trust.

11

The amended counterclaims naming Mother were plainly asserted against a non-party, as Mother had already been removed as a plaintiff in Suit II and dismissed as a counterclaim defendant, given her death. The amended counterclaims naming Austin and John were also asserted against non-parties as they did not name Austin individually, or Austin and John as the Marital Trust Successor Trustees. It is a settled principle grounded in fundamental notions of due process that "no judgment can be granted against someone who is not a party to the case." *Doss v. Howell-Oregon Elec. Co-op., Inc*, 158 S.W.3d 778, 783 (Mo. App. S.D. 2005).

The Beneficiaries could have sought leave to join Austin and John in the legal capacities named in the counterclaims. They failed, however, to do so. Rule 55.32 addresses the procedure for filing counterclaims, and provides at Rule 55.32(g) that "*[p]arties other than those made parties to the original action may* be made parties to a counterclaim . . . in accordance with the provisions of Rules 52.04 and 52.05 [addressing joinder]." (Emphasis added.) Though the Beneficiaries were clearly on notice that the Suit II plaintiffs contested the trial court's jurisdiction to entertain counterclaims seeking relief from non-parties, the Beneficiaries never sought leave pursuant to Rule 55.32.[9]

The Beneficiaries also ignored this issue in their responsive summary judgment pleadings, where they offered the trial court no analysis or legal authority to contest the

---

[9]Implicit in our decision is that a party named in an individual capacity is different than a party named in a representative capacity. The Committee Note to Rule 55.32 indicates that it is "substantially the same as Rule 13 of the Federal Rules of Civil Procedure . . . ." "The generally prevailing, although not uniform, view is that the 'opposing party' requirement [in Rule 13] means that when a plaintiff has brought suit in one capacity, the defendant my not counterclaim against him in another capacity." *Chambers v. Cooney*, 537 F. Supp. 2d 1248, 1253 (S.D. Ala. 2008) (internal citation omitted). *See also Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652, 663 (Mo. banc 1962) (holding that a petition was sufficient to support a judgment for attorneys' fees and expenses against trustees in their representative capacity, and not in their individual capacity, because the plaintiffs' petition asserted claims of liability against trustees in their representative capacity).

argument that the counterclaims named non-parties. Though the Beneficiaries' failure to address this legal issue in their summary judgment pleadings did not relieve the trial court of the obligation to correctly determine the law, the lack of any response to this urged basis for entering summary judgment is noteworthy.

On appeal, the Beneficiaries' analysis regarding this potential basis for the trial court's grant of summary judgment is limited:

> The Respondents' Petition [in Suit II] identifies as Plaintiffs [Austin] and [Mother] and as Trustees for the [Marital Trust]. (LF24) It is in those same capacities that those Defendants were sued in [Suit I] and it is their misdeeds in those trust capacities that form the basis of the . . . counterclaims in this suit.

[Appellants' Brief pp. 13-14] This is not an accurate statement. The referenced page in the legal file is page 1 of the Suit II petition. On that page, Austin is plainly identified as a plaintiff individually, and not in any capacity as a trustee.[10] Only Mother is named individually and as the trustee for the Marital Trust. More to the point, even accounting for the fact that the Marital Trust Successor Trustees were later substituted for Mother as a plaintiff in that capacity in Suit II following Mother's death, and even accounting for the fact that Austin and John are the Marital Trust Successor Trustees, the counterclaims do not assert claims against Austin and John in their capacity as Marital Trust Successor Trustees.

We recognize that Austin and John had knowledge of the counterclaims. However, their knowledge does not substitute for the plain requirements of Rule

---

[10]As previously noted, the caption of Suit II does not name Austin in any representative capacity and the allegations in Suit II clearly identify Austin as an individual.

13

55.32(g), or for the trial court's related obligation to assess whether joinder of non-parties was permissible or required. See Rules 52.04, 52.05. "[I]t is well established that '[j]oinder as a party, rather than knowledge of a lawsuit . . . is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.'" *Doss*, 158 S.W.3d at 783 (quoting *Wilkes v. St. Paul Fire & Marine Ins. Co.*, 92 S.W.3d 116, 123 (Mo. App. E.D. 2002)). "The determination of whether someone is or becomes a party to [an] action takes into account whether the person or entity was designated as a party in the petition . . . ." *Doss*, 158 S.W.3d at 783. Neither Austin nor John were named as plaintiffs in Suit II in their capacities as trustee or successor trustees of the 1976 Trust, the QTIP Trust, or the Family Trust. They did not become parties to the counterclaims in capacities raised by the allegations in the counterclaims simply because they were plaintiffs in other legal capacities in Suit II.

"If [a] person or entity was not named a party to [an] action at the time of [a] judgment, a trial court acts in excess of its jurisdiction by entering a judgment against that person or entity." *Id*. (citing *Wilkes*, 988 S.W.2d at 48-9). Here, had the trial court entered judgment on the counterclaims against Trustee Austin or against Austin and John as successor trustees for Mother as to the 1976 Trust, the QTIP Trust or the Family Trust, it would have "entered a judgment that was beyond its jurisdiction; thus [a] judgment [that] is void." *Doss*, 158 S.W.3d at 783. Thus, the trial court properly granted summary judgment on the Beneficiaries' counterclaims because they sought judgments against parties not a part of the original proceeding.

The Beneficiaries also allege in their second point on appeal that it was error for the trial court to grant summary judgment because the summary judgment motion was not renewed after the Beneficiaries were granted leave to file their amended counterclaims. This argument has no merit under the circumstances of this case. The issue with respect to whether the counterclaims named non-parties beyond the trial court's jurisdiction to enter a judgment was clear to the parties and to the trial court and was not impacted by the amended counterclaims. "'[W]hen the issues and the documents in support of [a] motion [for summary judgment] are clear to the litigants, the trial court, and the appellate court, the failure to comply with Rule 74.04 does not per se preclude the granting of summary judgment nor the affirming of such a judgment.'" *Smith v. City of St. Louis*, 409 S.W.3d 404, 423 (Mo. App. E.D. 2013) (quoting *Premier Golf Missouri, LLC v. Staley Land Co*., LLC, 282 S.W.3d 866, 872 (Mo. App. W.D. 2009) (other citation omitted)). The mere filing of a short pleading "renewing" the un-ruled motion for summary judgment after the amended counterclaims were filed would not have added anything to the parties' or the trial court's understanding of the legal issues presented by the summary judgment motion. The Beneficiaries do not argue or suggest to the contrary.

Point two on appeal is denied.

15

## Conclusion

The trial court's grant of summary judgment is affirmed.[11]

*Cynthia L. Martin*
_____
Cynthia L. Martin, Judge

All concur.

---

[11]The Beneficiaries do not allege a point on appeal claiming error involving the third basis argued in the summary judgment motion--that the counterclaims failed to state claims because they involved trusts that had already terminated. The failure to claim error with respect to this potential independent basis for the trial court's judgment is fatal to the Beneficiaries' appeal. *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that the failure to properly challenge all grounds that could have supported trial court's judgment is fatal to appeal). The Beneficiaries do briefly mention this subject in the argument portion of their Brief in discussing their second point on appeal. However, because the argument exceeds the scope of the point relied on, it preserves nothing for our review. *Goudeaux v. Board of Police Commissioners of Kansas City*, 409 S.W.3d 508, 522 n.18 (Mo. App. W.D. 2013) (holding that argument which exceeds points relied on is not preserved for appellate review).