

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| SAVANA ATKISSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD87209 |
| | ) | |
| MISSOURI DEPARTMENT OF CORRECTIONS, | ) | Opinion filed:  June 3, 2025 |
| | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI
THE HONORABLE COTTON WALKER, JUDGE**

Before Division Two:  Cynthia L. Martin, Presiding Judge,
Gary D. Witt, Judge and W. Douglas Thomson, Judge

Savana Atkisson ("Atkisson") appeals from the trial court's judgment granting summary judgment to the Missouri Department of Corrections ("DOC") on her claims of sex discrimination and hostile work environment under the Missouri Human Rights Act ("MHRA"), section 213.010 *et seq.*[1]  Atkisson raises four Points on Appeal, all of which claim trial court error with respect to her hostile

---

[1] All statutory references, including references to chapter 213, are to RSMo (2016), unless otherwise stated.

work environment claim.[2]  Because Atkisson fails to appeal an independent basis for the trial court's grant of summary judgment on said claim, we affirm.

### Factual and Procedural History[3]

Atkisson was a female corrections officer ("CO") at Jefferson City Correctional Center ("JCCC"), a maximum-security prison operated by the DOC. JCCC houses approximately 1,950 male felony offenders charged with crimes such as domestic assault, felony assault, and manslaughter.  Most offenders at JCCC live in housing units shaped like an X, with four separate wings designated A through D ("Housing Unit Wings") that extend out from a central command center called the "Bubble."  Each Housing Unit Wing is enclosed by a secured door controlled in the Bubble.  Each Housing Unit Wing contains showers, as well as the offenders' cells in which they live and sleep.  The offenders' cells also contain toilets.

Among her duties as a CO, Atkisson monitored offender movements and conducted cell searches and counts.  COs are required by DOC policy to conduct unannounced security checks in each housing unit by physically walking through

---

[2] Atkisson does not challenge the grant of summary judgment to the DOC on her sex discrimination claim.

[3] We set forth the facts properly before us in the summary judgment record.  *See Bracely-Mosley v. Hunter Eng'g Co.*, 662 S.W.3d 806, 811 (Mo. App. E.D. 2023); *Green v. Fotoohighiam,* 606 S.W.3d 113, 121 (Mo. banc 2020) ("[A]ny court – whether it be the circuit court addressing summary judgment in the first instance or an appellate court reviewing an entry of summary judgment – need only consult what was properly put before it by way of Rule 74.04(c) paragraphs and responses.").  We review such facts "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Green*, 606 S.W.3d at 116 (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011), *abrogated on other grounds by Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778, 785 (Mo. banc 2023)).

All rule references are to Missouri Supreme Court Rules (2024).

each wing and looking into each cell at random times twice every hour.[4] At times, Atkisson would be the only roving officer conducting security checks during a shift. The time of each security check and the name of the officer(s) who conducted it are recorded on a document called a "chronolog." Atkisson also wrote conduct violations against offenders during her employment. Pursuant to the DOC's Offender Rulebook, such conduct violations could be issued to an offender found to have engaged in any of the following prohibited behaviors:

a. Threats, including "action (either verbally, physically or in writing) which harms or creates the belief of harm to another person or her/his property."

b. Sexual misconduct, including "[e]ngaging in the self touching of one's sexual parts in view of others" and "[i]nappropriately exposing one's sexual parts to others."

c. Creating a disturbance, including "action on the part of one or more offenders that threatens the custody, control or security of the institution", "[t]aking any evasive action including, but not limited to, running from or hiding from a staff member for the purpose of avoiding observation or apprehension", and "[e]ngaging in conduct that interferes with normal operations."

d. Insulting behavior, including "[s]ubjecting another person to abusive or obscene language or gestures."

DOC Policies are statewide directives for all institutions. One of these Policies is Policy D1-8.13 ("Gender Announcement Policy"), which provides:

1. Cross-gender strip searches are not allowed except in exigent circumstances. All cross-gender strip searches will be documented as

---

[4] The DOC responded to this statement of additional material fact by Atkisson with an "[o]bjection" without asserting whether the statement was admitted or denied. "By 'objecting' in this manner, [the DOC] did not admit or deny facts as mandated by Rule 74.04(c)(2), and those statements are deemed admitted." *Shiffman v. Kansas City Royals Baseball Club*, 687 S.W.3d 443, 461 (Mo. App. W.D. 2024) (citing *Green*, 606 S.W.3d at 117).

3

outlined in the department, institutional services and probation and parole procedures regarding searches.

2. Offenders will be allowed to shower, perform bodily functions, and change clothing without non-medical staff members of the opposite gender viewing their breast, buttocks, or genitalia, except in exigent circumstances, or when such viewing is incidental to routine cell checks in accordance with department, institutional services, and probation and parole procedures regarding searches.

   a. Staff members of the opposite gender will announce their presence prior to entering an offenders housing unit. If an opposite gendered staff member is assigned to the housing unit, the announcement will be made at the beginning of the shift. If there is no opposite gendered staff member assigned to the housing unit, an announcement will be made each time an opposite gendered staff member enters the housing unit.

      (1) Each time a cross gender announcement is made it will be recorded in the housing unit chronological log.

      (2) If a circumstance arises to where a cross gender announcement could comprise [sic] the safety, security, and good order of the facility, the shift supervisor may declare the circumstances to be exigent and grant the authority to waive the announcement. All exigent circumstances will be documented by the shift supervisor in the chronological log.

      (3) To notify hearing impaired offenders of cross gender staff in the housing unit, all housing units should display a sign indicating when a cross gender staff member is present.

   b. If a staff member of the opposite gender is required to venture past privacy barriers, and no exigent circumstances exist, the staff member will verbally announce their presence to the offenders and allow the offenders to seek privacy from the staff member viewing the offender's buttocks, breast, or genitalia.

In addition to DOC-wide policies like D1-8.13, each DOC facility has its own Standard Operating Procedures and various Post Orders clarifying how to comply with DOC policy within each prison or at a specific post. These Post Orders are

4

written at the prison level and are specific for the institution at which they are written.

Prior to February 2017, JCCC Post Order #12 provided the following guidance for complying with the Gender Announcement Policy in JCCC's housing units:

Before the Morning Meal Movement on 1st Shift and at the beginning of 2nd and 3rd shift the assigned officer will announce over the intercom system **"There are men and women working this shift"**. *__NOTE__:* This announcement will only be made when a female officer is on duty. In the event that no female officers are on duty, the announcement will be made when a female enters the housing unit. This action will be recorded in the chronological log as "gender announcement made" and the time the announcement made [sic] will also be documented.

However, in February 2017, JCCC revised over two dozen Post Orders regarding the content of the Gender Announcement and when it had to be made. This included Post Order #12, which was revised as follows:

**GENDER ANNOUNCEMENT (Female in wing)**

The announcement will be made when female staff enters the housing unit wing (offender living area).

a. When female staff member is assigned to work in the housing unit wing the **announcement** will be made over the intercom stating: "Female in the Housing Unit, this shift".

b. **Signs** will be displayed indicating that an opposite gender staff member is in the housing unit, it will be posted in the housing unit module so it is visible to everyone in the unit. (Each HU is equipped with 2 signs). These signs will remain posted the entire time a female staff member is in the unit. Anytime female staff is not present, the sign will be taken down. The sign will be removed when no female staff is present. Repost the sign when they return or arrive.

c. The officer will make a **log entry** in the chronological log indicating when the announcement was made, signs posted and time completed.

Each cross-gender announcement is made and recorded by the officer assigned to the Bubble. In a final Prison Rape Elimination Act ("PREA") Facility Audit Report dated April 20, 2017, JCCC was found to be "clearly compliant with PREA standards" without any deficiencies being noted.

Almost immediately after JCCC started requiring the Gender Announcement to be made each time a female CO entered a new wing of the housing unit, Atkisson began to experience daily offender catcalling and yelling at her to "show [them her] boobs" every time she entered a housing unit wing. Atkisson was unable to identify which offender was responsible for inappropriate remarks made behind a cell door.[5] She received support from other officers, including her supervisors, to identify offenders responsible for inappropriate comments.[6] Atkisson believes there is "nothing else that could be done" other than the support she received to identify which offender was responsible for such remarks.[7] Similarly, she "[does not] know if there is anything that [MDOC] could have done differently" to eliminate the alleged offender misconduct other than "not

---

[5] Atkisson responded to this statement of uncontroverted material fact by the DOC with an "[o]bjection" without asserting whether the statement was admitted or denied. "By 'objecting' in this manner, [Atkisson] did not admit or deny facts as mandated by Rule 74.04(c)(2), and those statements are deemed admitted." *Shiffman*, 687 S.W.3d at 461 (citing *Green*, 606 S.W.3d at 117).

[6] *See supra* note 5.

[7] Atkisson's response to this statement of uncontroverted material fact by the DOC was "[u]ndisputed by [sic] misleading." By responding "[u]ndisputed," we assume Atkisson is admitting the statement. On the other hand, if Atkisson meant to deny the statement by responding "[u]ndisputed by [sic] misleading," it is not a proper denial under Rule 74.04(c)(2), meaning the statement would be deemed admitted. *See* Rule 74.04(c)(2). Thus, in any event, we read this statement of uncontroverted material fact as admitted by Atkisson.

institute[] this [cross-gender] announcement to begin with . . . ."[8] (alterations and omission in original). Atkisson ultimately resigned from the DOC in March of 2020.

On or about May 2, 2017, Atkisson filed a Charge of Discrimination against the DOC with the Missouri Commission on Human Rights. Atkisson was subsequently issued a Notice of Right to Sue, and she filed her petition for damages and injunctive relief against the DOC on June 29, 2017. The petition alleged two counts, specifically that the DOC's gender announcement policy discriminated against Atkisson on the basis of her sex, as well as that the DOC's new gender announcement policy caused a hostile work environment by enabling offenders' sexual harassment of Atkisson. Along with compensatory and punitive damages, the petition requested "[i]njunctive relief including, but not limited to, a prohibition against requiring female corrections officers at JCCC to announce their presence when entering a housing unit wing[.]"[9]

The DOC later filed a motion for summary judgment on both of Atkisson's claims. The DOC asserted several grounds for summary judgment in its favor, some of which applied to both claims and others which applied to each claim individually. Regarding the former, the DOC first argued that it was entitled to judgment as a matter of law on Atkisson's claims under the doctrine of conflict preemption because the challenged practices are mandated by federal law, namely

---

[8] *See supra* note 7.
[9] The petition also requested costs and reasonable attorneys' fees, post-judgment interest, and such other relief as the court deemed just and proper.

the PREA. The DOC also contended that Atkisson's claims are in essence disparate impact claims, which it argued are not cognizable under the MHRA.

With respect to Atkisson's hostile work environment claim specifically, the DOC first argued the claim failed as a matter of law because the DOC cannot be held liable for the alleged offender misconduct without special circumstances entirely absent in the present case. The DOC further argued that even if the alleged misconduct could be attributed to the DOC, Atkisson would be unable to show two elements of her hostile work environment claim. More specifically, the DOC asserted Atkisson cannot show that a term, condition, or privilege of her employment was affected by the DOC's compliance with the PREA standards, nor that the DOC failed to take appropriate action against any offender misconduct.

Atkisson subsequently filed her response to the DOC's statement of uncontroverted material facts, her suggestions in opposition to the DOC's motion for summary judgment, and her own statement of additional material facts. Following a hearing on the DOC's motion for summary judgment, the DOC filed its response to Atkisson's statement of additional material facts.

On April 22, 2024, the trial court entered an Order and Judgment granting the DOC's motion for summary judgment. The trial court first determined that Atkisson's "claims are preempted by PREA, and summary judgment in favor of [DOC] is appropriate and entered." The trial court then analyzed each claim individually.

Regarding the hostile work environment claim, the trial court first held that "[a]s a matter of law, [Atkisson] has not shown conduct that constitutes actionable harassment to create a hostile work environment." In so holding, the court found "[t]here is no evidence of special circumstances that would allow [Atkisson] to attribute offender misconduct to [DOC] in order to show that harassment affected a term, condition, or privilege of her employment." The court also determined that Atkisson "has not shown harassment that can objectively be viewed as so severe or pervasive to alter the conditions of her employment and create a discriminatory hostile, abusive work environment." Next, the trial court held that summary judgment was warranted in favor of the DOC "[a]s there is no evidence that [DOC] failed to take appropriate action in response to any harassment[.]" The court specifically found the following in so holding:

> [Atkisson] also cannot show [DOC] failed to take appropriate action in response to any harassment she endured. Her supervisors and coworkers assisted [her] to identify offenders responsible for inappropriate remarks so that they may be disciplined. [Atkisson] concedes that she is unable to suggest what [DOC] could have done differently, other than not implement the cross-gender announcement policy to begin with. But [DOC] was required to do so by PREA.

Lastly, the court held that even if Atkisson could establish a *prima facie* case for both of her claims, the DOC "offered a legitimate and non-discriminatory reason for revising its policy: to comply with PREA." The trial court found Atkisson had not argued that this claimed reason was pretextual, thereby entitling the DOC to summary judgment.

Atkisson appeals.

9

## Standard of Review

"We review the grant of a motion for summary judgment *de novo* and need not defer to the trial court's determinations." *Shiffman v. Kansas City Royals Baseball Club, LLC*, 687 S.W.3d 443, 458 (Mo. App. W.D. 2024) (citing *J.H. by and through Meudt-Antele v. Jefferson City Pub. Sch. Dist.*, 661 S.W.3d 353, 357 (Mo. App. W.D. 2023)). However, "'[w]e will affirm the trial court's granting of summary judgment if it is correct as a matter of law on any grounds.'" *Id.* at 459 (quoting *Show-Me Inst. v. Off. of Admin.*, 645 S.W.3d 602, 607 (Mo. App. W.D. 2022)).

"Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011), *abrogated on other grounds by Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778, 785 (Mo. banc 2023)). "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Id.* at 116 (quoting *Goerlitz*, 333 S.W.3d at 453). A defending party, such as the DOC, is entitled to summary judgment if it demonstrates one of the following:

> (1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to – and will not be able to – produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.

10

*Shiffman*, 687 S.W.3d at 459 (quoting *Show-Me Inst.*, 645 S.W.3d at 607).

## Analysis

Atkisson raises four Points on Appeal. In her first Point, Atkisson claims the trial court erred in ruling her hostile work environment claim was preempted by federal law. In Point II, Atkisson asserts the trial court erred in granting summary judgment on her hostile work environment claim because she raised genuine disputes of material fact as to whether she was subjected to discriminatory harassment sufficiently severe or pervasive to change the terms or conditions of her employment. Point III contends that the trial court erred in applying the Eighth Circuit's "special circumstances" test[10] to Atkisson's hostile work environment claim "because Missouri law does not impose a heightened burden on certain kinds of employees in that the MHRA already requires a hostile work environment plaintiff to prove her 'employer knew or should have known of the harassment and failed to take proper remedial action.'" Lastly, in Point IV, Atkisson argues the trial court erred in granting summary judgment on her claim for hostile work environment based on its conclusion that she could not show the

---

[10] This test is found in *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546 (8th Cir. 2007) and provides "that, in the absence of special circumstances . . ., the conduct of inmates cannot be attributed to an employer in order to show *that the harassment affected a term, condition, or privilege of employment.*" *Id.* at 551 (emphasis added). As is evident, the Eighth Circuit pronounced this test in deciding the fourth element of the plaintiff's Title VII hostile work environment claim, i.e., "whether Vajdl suffered an adverse employment action affecting the term, condition, or privilege of employment." *Id.* at 550-51, 550 n.2.

11

DOC's "legitimate nondiscriminatory reason" for revising JCCC's gender announcement was pretextual.

As can be seen, all of Atkisson's Points on Appeal concern her hostile work environment claim. To prevail on a claim of hostile work environment based on sexual harassment, the plaintiff must establish all of the following: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) her sex was a contributing factor[11] in the harassment; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action.[12] *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 83 (Mo. App. W.D. 2015); *Alhalabi v. Mo. Dep't of Nat. Res.*, 300 S.W.3d 518, 527 (Mo. App. E.D. 2009); *M.W. by and though K.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400, 409 (Mo. App. E.D. 2020).

Critically, one of the trial court's stated bases for granting summary judgment to the DOC on Atkisson's hostile work environment claim concerned the fifth element of said claim. The trial court specifically found that "[a]s there is no

---

[11] The 2017 amendments to the MHRA replaced the "contributing factor" causation standard with a "motivating factor" test. *Young v. Mo. Dep't of Corr.*, 691 S.W.3d 815, 823 n.3 (Mo. App. W.D. 2024). However, these August of 2017 amendments took effect after the filing of this suit, meaning the pre-amendment "contributing factor" standard applies. *See M.W. by and though K.W. v. Six Flags St. Louis, LLC,* 605 S.W.3d 400, 409 n.8 (Mo. App. E.D. 2020); *see also Young*, 691 S.W.3d at 823 n.3.

[12] This fifth element is required where, as here, the alleged harasser is a non-supervisory employee or a third party. *See e.g. Clark v. AT&T Mobility Servs., L.L.C.*, 623 S.W.3d 197, 205 n.7 (Mo. App. W.D. 2021) (citing *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 76 (Mo. App. W.D. 2015)). Here, the alleged harassers are DOC inmates.

12

evidence that [DOC] failed to take appropriate action in response to any harassment [the fifth element of Atkisson's hostile work environment claim], summary judgment in favor of [DOC] is warranted." Atkisson does not raise a Point Relied On claiming error with respect to this finding. Consequently, Atkisson leaves unchallenged an independent basis for the trial court's entry of summary judgment in favor of the DOC on her hostile work environment claim. This is fatal to her appeal. *See The Schumacher Group, Ltd. v. Schumacher*, 474 S.W.3d 615, 624 n.11 (Mo. App. W.D. 2015) (citing *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012)) ("The failure to claim error with respect to this potential independent basis for the trial court's judgment is fatal to the [appellants'] appeal."). Thus, even if we were to find the trial court erred in granting summary judgment to the DOC on Atkisson's hostile work environment claim for every reason stated in her Points I-IV, we must affirm because Atkisson does not claim the court erred in finding summary judgment was warranted due to the lack of evidence as to the DOC's alleged failure to take appropriate action in response to the alleged harassment. *See Planned Parenthood of St. Louis Region v. Knodell*, 685 S.W.3d 377, 386 (Mo. banc 2024).

Despite this necessary result, Atkisson suggests in her Reply Brief that we should overlook her "technical" failure to address in a Point Relied On this independent basis for the trial court's judgment, given that she touched upon the fifth element of her hostile work environment claim in her Brief. In so arguing, Atkisson utilizes the oft-repeated principle, "[t]his Court will frequently exercise

13

its discretion to overlook technical deficiencies in an appellant's Points Relied On, where the argument section of the brief clarifies the appellant's claim of error." *Matter of Marvin*, 682 S.W.3d 788, 797 (Mo. App. W.D. 2023) (collecting cases).

Atkisson's request is misplaced, as her failure is not merely "technical." This is not a situation where a Point Relied On is faulty or failed to follow the requisite Rule 84.04(d) template for Points Relied On.[13] Rather, Atkisson completely failed to raise a Point Relied On challenging this independent basis for the trial court's summary judgment, thereby arresting any appellate review concerning that independent basis. "We may not address issues on appeal that have not been properly raised by the parties. Rule 84.13. To raise an issue on appeal, a party *must* present the issue separately in the points relied on section of their appellate brief. Rule 84.04." *Calvert v. Plenge*, 351 S.W.3d 851, 857 (Mo. App. E.D. 2011) (emphasis added). This is simply a failure we cannot overlook.

In fact, this failure renders wholly inapplicable the principle upon which Atkisson relies in requesting our gratuitous review. The natural corollary which allows for the argument portion of a brief to clarify deficiencies in a Point Relied On is that *there must be* a corresponding, deficient Point Relied On to which such arguments would apply. Here, however, Atkisson failed to include whatsoever a

---

[13] *Cf. Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017) (exercising discretion to review two points that failed to follow Rule 84.04(d)(1) template where said "points provide this Court and [respondent] adequate notice of the issues raised in the argument section"); *Crisp v. Mo. Sch. for Deaf, Dep't of Elementary & Secondary Educ.*, 681 S.W.3d 650, 658-59 (Mo. App. W.D. 2023) (exercising discretion to address a multifarious point relied on).

Point Relied On challenging the trial court's findings as to the fifth element of her claim. Naturally then, there is no corresponding, "deficient" Point Relied On to clarify. Consequently, the principle stated in *Matter of Marvin*, *supra*, does not apply here.

Moreover, while Atkisson does briefly mention the fifth element in the argument portion of her Brief in discussing her second and third Points on Appeal, "because the argument exceeds the scope of the point[s] relied on, it preserves nothing for our review." *Schumacher*, 474 S.W.3d at 624 n.11 (appellants briefly mentioned an issue in the argument portion of their Brief, but the argument exceeded the point relied on and therefore preserved nothing for appellate review) (citing *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 522 n.18 (Mo. App. W.D. 2013) (holding that argument which exceeds points relied on is not preserved for appellate review)). Indeed, Points II and III challenge findings of the trial court with respect to the *fourth* element of her hostile work environment claim, i.e., that the harassment affected a term, condition, or privilege of her employment. Point III specifically targets the Eighth Circuit's "special circumstances" test, discussed *supra*. As our court recently explained,

> "The argument section of an appellant's brief serves as the vehicle by which an appellant demonstrates why the trial court ruling or action, as specifically identified in the point relied on, is erroneous because of the legal reasons, as concisely stated in the point relied on . . . supports the stated legal reasons for the claim of reversible error." *Hale* [*v. Burlington N. & Santa Fe Ry. Co.*], 638 S.W.3d [49, 61 (Mo. App. S.D. 2021)]. Thus, "[t]he argument *shall* be limited to those errors included in the 'Points Relied On.'" *Id.* (quoting Rule 84.04(e)) (emphasis in original). "Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not

15

preserved for our review." *Id.* (quoting *Davis v. Wieland*, 557 S.W.3d 340, 352 n.10 (Mo. App. W.D. 2018)).

*Johnson v. Usera*, 695 S.W.3d 272, 285-86 (Mo. App. W.D. 2024) (omission in original) (first and second alterations added). Because Points II and III do not assert error with respect to the trial court's findings as to the fifth element, any argument Atkisson raises therein concerning said element are not preserved for our review.

Atkisson's appeal cannot succeed. She appeals only the grant of summary judgment to the DOC on her hostile work environment claim, yet fails to raise a Point on Appeal claiming error with the trial court's specifically articulated finding that summary judgment was warranted on said claim due to the lack of evidence pertaining to the fifth element of same. By failing to appeal this finding, Atkisson necessarily leaves unchallenged an independent basis for the trial court's entry of summary judgment in favor of the DOC on her hostile work environment claim. Accordingly, the trial court's judgment must be affirmed.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

16